Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 11, 2017

**2017 CO 89**

**No. 14SC49, <u>People v. Clemens</u>—Juror Rehabilitation—Voir Dire—Silence.**

In this case, the supreme court considers whether a prospective juror's silence in response to rehabilitative questioning constitutes evidence sufficient to support a trial court's conclusion that the juror has been rehabilitated. We conclude that it does when, in light of the totality of the circumstances, the context of that silence indicates that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial. We further conclude that, applying this test, the trial court did not abuse its discretion in denying defense counsel's challenges for cause. Accordingly, we reverse the judgment of the court of appeals.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2017 CO 89

**Supreme Court Case No. 14SC49**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 11CA1460

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Bradley Raymond Clemens.

### Judgment Reversed
*en banc*
September 11, 2017

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
Rebecca A. Adams, Senior Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent:**
Douglas K. Wilson, Public Defender
Jon W. Grevillius, Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Darling Milligan Horowitz PC
Jason B. Wesoky
  *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.
**JUSTICE HOOD** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE GABRIEL** join in the dissent.

¶1    We granted certiorari to consider whether the trial court abused its discretion when it relied on three prospective jurors' silence in response to questions asked of the entire venire to conclude that those jurors had been rehabilitated after they had previously expressed a preconceived opinion about the defendant's right to remain silent.[1]

¶2    We hold that a prospective juror's silence in response to rehabilitative questioning constitutes evidence sufficient to support a trial court's conclusion that the juror has been rehabilitated when, in light of the totality of the circumstances, the context of that silence indicates that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial. We conclude that the context surrounding the challenged prospective jurors' silence in this case supported the trial court's conclusion that they had been rehabilitated, meaning that the trial court did not abuse its discretion in denying defense counsel's challenges for cause.[2] Accordingly, we reverse the judgment of the court of appeals.

---

[1] We granted certiorari to review the following issues:

1. Whether a prospective juror who has indicated a preconceived opinion can be rehabilitated by silence following a question or questions made to the entire venire.

2. Whether, even assuming that the trial court erred in depriving the challenges for cause, any error was harmless because the prospective jurors did not sit on the jury.

[2] Because we conclude that the trial court did not err in denying Clemens's challenges for cause, we need not consider the second issue on certiorari of whether any error was nonetheless harmless.

# I. Facts and Procedural History

¶3 Defendant Bradley Raymond Clemens chased his girlfriend out of their home and attacked her with a golf club on the street. He also attacked a bystander who attempted to intervene and stop the assault. The People charged Clemens with second-degree assault, felony menacing, and third-degree assault. Clemens pleaded not guilty, and the matter proceeded to a jury trial.

¶4 The trial court judge began jury selection for Clemens's trial by addressing all of the prospective jurors. She first summarized the main principles of criminal law, including that "[t]he defendant is never compelled to testify, and the fact that he does not cannot be used against him or as an inference of guilt and should not prejudice him in any way." The judge also told the jurors that she would ask them open-ended questions and that they should raise their hands if they had an answer. Later, she reminded the jurors that if anyone had answers to questions asked of the whole venire, "[P]lease just raise your hand." Consequently, prospective jurors actively volunteered answers throughout her and the attorneys' questioning.

¶5 During Clemens's portion of voir dire, defense counsel questioned the venire members, asking for their thoughts on relevant legal principles. Jurors 7, 10, and 12 all responded to various questions throughout defense counsel's voir dire. At one point, defense counsel asked the venire members questions about their ability to fairly assess the credibility of witnesses. After concluding that discussion, defense counsel pointed out to Juror 25 that he had commented that he would want to "hear both sides of what happened." Juror 25 confirmed that he felt that way, and defense counsel explained

3

that Clemens has a constitutional right not to testify. Juror 25 commented that there are "always two sides to the story" and that he would need to hear both sides before making a judgment call. Defense counsel followed up by asking, "if you don't hear from [Clemens] you have some real concerns as to whether or not you can find him not guilty?" Juror 25 said that was correct.

¶6 Defense counsel then asked the entire venire whether anyone else felt the same way that Juror 25 did, and Juror 12 volunteered that when one of her children will not tell their side of the story, she becomes immediately suspicious. Defense counsel asked her whether she would have a hard time finding Clemens "not guilty if [she didn't] hear from him and hear an explanation out of his mouth." Juror 12 responded, "[P]robably." Juror 10 followed with an opinion that if someone does not tell their side of the story, they have "something to hide." Defense counsel responded by asking, "Even though the Judge may instruct you that you can't use [his silence] as inference of guilt, you have real concerns you would use that as an inference of guilt?" and Juror 10 responded, "[Y]es." Juror 9 and Juror 7 each said that they agreed with those same sentiments. When defense counsel followed up and asked Juror 7 if she would "have trouble following the Judge's instruction that you may not use Clemens's exercising of the right to remain silent, that you would use that against him," she responded, "[Y]es." Defense counsel then shifted her line of questioning and asked the panel for reasons a defendant may choose not to testify. Juror 8 said that a defendant may not want to testify because then the prosecution can ask him questions about his past offenses.

¶7     At that point the judge interjected. In so doing, the judge addressed the entire venire and explained that "[a] very important part of our judicial system is that the defendant never has to present any evidence or testify themselves [sic]. And you cannot use the fact that a defendant does not take the stand as evidence one way or the other." She further advised the jury that if a defendant does not take the stand, "the jury is instructed that [it] cannot guess [what] the reason is." The judge also explained that if the prosecution does not prove its case beyond a reasonable doubt as to each element of the offense, then the jury must find Clemens not guilty even if he puts on no evidence in his defense. At the conclusion of her explanation, the judge asked the venire, "[If] the prosecution[] failed to present enough evidence, would the fact that the defendant may not testify make you change your mind and say now I'm going to find him guilty because he didn't testify even though there wasn't enough evidence to prove the case; anyone who would do that?" Juror 25 said that he would—that if the defendant did not testify, then he must have something to hide and be guilty. No other juror responded to the court's question.

¶8     Defense counsel then resumed her voir dire and asked whether anyone else who had previously indicated that they would want to hear the defendant testify "still feels that if you don't hear from Mr. Clemens that would be a problem for you reaching a verdict of not guilty in this case?" At this point, Juror 47 answered that he could not find Clemens not guilty if he did not hear Clemens's side of the story; Juror 48 agreed with Juror 47. Defense counsel then asked whether "anybody else ha[d] anything more to say?" Juror 11 said that he was glad to have the additional information from the

5

judge. Jurors 7, 10, and 12 did not respond. No other prospective jurors commented further on the issue, and defense counsel moved on to questioning the panel about domestic violence.

¶9 After defense counsel finished questioning the prospective jurors, she asked the court to excuse nine jurors for cause, including Jurors 7, 9, 10, 12, 25, 47, and 48. In support of her request, defense counsel argued that Jurors 7, 9, 10, and 12 had all indicated before the court's admonition that they would want to hear Clemens testify. The judge responded that, after she had clarified the law, Jurors 7, 9, 10, and 12 had not indicated that they could not follow the law when she called for a response, while Juror 25 had so indicated. Accordingly, the trial judge excused Jurors 25, 47, and 48 but denied defense counsel's request as to Jurors 7, 9, 10, and 12.

¶10 During peremptory challenges, the prosecution excused Juror 9. Defense counsel used peremptory challenges to excuse Jurors 7, 10, and 12. The jury was then sworn in, and the jurors took an oath to follow the law as instructed by the court. The matter proceeded to trial, and Clemens elected not to testify. Before deliberations, the judge instructed the jury that "[t]he defendant is never compelled to testify, and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way."

¶11 The jury ultimately found Clemens guilty of second- and third-degree assault but acquitted him of felony menacing. Clemens appealed his convictions, arguing, as relevant here, that the trial court erred in denying his request to excuse Jurors 7, 10, and 12 because they were not rehabilitated after they indicated that they could not follow

6

the law. In a split decision, a division of the court of appeals agreed with Clemens and held that silence does not constitute sufficient evidence that a prospective juror who had previously taken a position justifying a challenge for cause has been rehabilitated. People v. Clemens, 2013 COA 162, ¶ 25, ___ P.3d ___. The division thus reversed Clemens's convictions and remanded his case for a new trial. Id. at ¶ 30. Judge Bernard concurred in part and dissented in part, concluding that the challenged jurors' silence "in response to the court's and defense counsel's questions was an assurance that they would follow the court's instructions." Id. at ¶ 67. He reasoned that "reasonable jurors in these circumstances would only have answered these questions verbally if they still harbored concerns about the prospect that [Clemens] might not testify." Id. at ¶ 58.

¶12 We granted certiorari to determine whether a juror's silence in response to questions posed to the venire can be sufficient evidence of rehabilitation after that juror has indicated a preconceived notion. We hold that it can, and we conclude that the trial court did not abuse its discretion in denying Clemens's challenges for cause because, in light of the totality of the circumstances evinced in the voir dire record, Jurors 7, 10, and 12's silence constituted sufficient evidence supporting the trial court's conclusion that they had been rehabilitated.

## II. Standard of Review

¶13 We review a trial court's ruling on a challenge for cause to prospective jurors for an abuse of discretion. Carrillo v. People, 974 P.2d 478, 485 (Colo. 1999). This standard gives deference to the trial court's assessment of the credibility of prospective jurors' responses, recognizes the trial court's unique role and perspective in evaluating the

demeanor and body language of prospective jurors, and serves to discourage reviewing courts from second-guessing the trial court based on a cold record. Id. at 486. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. People v. Stewart, 55 P.3d 107, 122 (Colo. 2002).

## III. Applicable Law and Analysis

¶14 To determine whether the trial court abused its discretion in finding that Jurors 7, 10, and 12 were rehabilitated, we first review the law applicable to the right to be tried by a jury and to jury selection; then, we explain the principles of juror rehabilitation and apply them to the case at hand.

## A. Silence as Evidence of Rehabilitation

¶15 Both the United States and Colorado Constitutions guarantee criminal defendants the right to a trial by an impartial jury. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. To protect this right, a trial court must excuse prejudiced or biased persons from the jury. Nailor v. People, 612 P.2d 79, 80 (Colo. 1980). Colorado law thus provides that the trial court shall sustain a challenge for cause when a prospective juror has indicated "enmity or bias toward the defendant or the state." § 16-10-103(1)(j), C.R.S. (2016). However, such a juror will not be excused for cause if, after further examination, the court believes that the juror will follow the law and can be impartial:

> [N]o person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial[.]

8

Id. Thus, if a court is satisfied that a challenged juror will render a fair and impartial verdict according to the law and the evidence presented at trial, then the court should not dismiss that juror for cause. People v. Young, 16 P.3d 821, 824 (Colo. 2001); see People v. Drake, 748 P.2d 1237, 1243 (Colo. 1988) ("A prospective juror's expression of concern or indication of the presence of some preconceived belief as to some facet of the case does not automatically mandate exclusion of such person for cause.").

¶16 The purpose of challenges for cause, as relevant here, is to remove jurors who have shown bias or enmity toward one of the parties, not jurors who simply enter the courtroom with a misunderstanding of the law. See § 16-10-103(1). Those jurors who initially misunderstand the law should not be removed for cause if, after explanation and rehabilitative efforts, the court believes that they can render a fair and impartial verdict based on the instructions given by the judge and the evidence presented at trial. The court makes this determination of whether a juror should be removed at the conclusion of voir dire, considering evidence such as the prospective juror's response to the counsels' questioning, the court's own questioning, and the demeanor and body language of the juror in the context of the entire voir dire. See Carrillo, 974 P.2d at 486–87.

¶17 It is normal for jurors to arrive for jury duty without knowing the relevant law. In particular, a potential juror's desire to "hear both sides" is reasonable considering that he knows that he will be called upon to decide the defendant's guilt. For this reason, trial judges explain the correct legal principles to jurors during voir dire. If, after such explanation, jurors no longer hold tight to their preconceived expectations

9

and instead are willing to apply the law as instructed by the court, then the jurors are rehabilitated.

¶18    We considered whether a juror with a preconceived notion had been rehabilitated in Young. In that case, a prospective juror said that he believed that the defendant must be guilty because he was charged with the crime and "if a person weren't guilty, he wouldn't be [at trial]." Young, 16 P.3d at 822. In response to subsequent questioning, the prospective juror said that his perspective was a general personal judgment and he would not let it cloud his assessment of the facts presented at trial. Id. at 823. We concluded that the trial court did not abuse its discretion in denying the defendant's challenge for cause because the juror had been rehabilitated. Id. at 825–26. We noted that it is not unusual for jurors to be confused or uncertain about difficult legal concepts, and we reasoned that the record as a whole supported the trial court's decision. Id. at 825. Specifically, we relied on two facts: (1) that upon further questioning, the juror said that he would judge the case on the facts; and (2) that when defense counsel said, "[w]e've already talked about the presumption of innocence and I take it no one disagrees with that," the juror did not voice disagreement. Id. Thus, that the juror did not vocalize disagreement with defense counsel's correct statement of the law constituted evidence supporting the trial court's finding that the juror had been rehabilitated. Id.

¶19    We agree with the reasoning in Young and extend its rationale to hold that a prospective juror's silence in response to rehabilitative questioning constitutes evidence that the juror has been rehabilitated when the context of that silence indicates that the

10

juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.[3] On the other hand, a juror's silence in response to group questioning could reflect reluctance to disagree with the court; in that case, such silence would not be indicative of the silent juror's mindset. As such, examination of the entire voir dire record is necessary to provide context.

## B. Application

¶20 We now apply these principles to the question at hand: whether Jurors 7, 10, and 12 were rehabilitated such that the trial court properly denied Clemens's challenges for cause. To do so, we must examine the jurors' statements or silence in light of the totality of the circumstances.

¶21 Initially, each of the challenged jurors indicated that they would like to hear from the defendant to get both sides of the story. Again, this is not an abnormal expectation. When a person normally makes an important decision, they like to receive all pertinent information or hear both sides of an argument. A juror's inability to follow the court's instructions, however, is grounds for their disqualification from jury service. Thus,

---

[3] We note that other jurisdictions have held that a prospective juror's silence can constitute evidence that the juror has been rehabilitated. See United States v. Martinez-Martinez, 369 F.3d 1076, 1082–83 (9th Cir. 2004) (construing a juror's failure to respond to a question framed in the negative as a commitment by that juror to follow the law, thus rehabilitating him); State v. Garrison, 276 S.W.3d 372, 377 (Mo. Ct. App. 2009) ("A venireperson's silence may constitute an unequivocal assurance of impartiality sufficient for the purpose of rehabilitation."). But see Doret v. United States, 765 A.2d 47, 56 (D.C. 2000), abrogated on other grounds by Crawford v. Washington, 541 U.S. 36 (2004) (holding that jurors' silence in response to group questioning was insufficient to rehabilitate them when they had close or familial relationships with persons in law enforcement); People v. Arnold, 753 N.E.2d 846, 851–52 (N.Y. 2001) (holding a juror's participation in a group answer to questions posed to the entire venire to be insufficient to rehabilitate her).

when the jurors at issue here answered "yes" to defense counsel's question of whether they would have difficulty following the court's instruction to the contrary, they required rehabilitation in order to serve on the jury.

¶22 And, under the totality of the circumstances, we conclude that Jurors 7, 10, and 12 were rehabilitated, meaning the trial court did not abuse its discretion in declining to dismiss them for cause. The trial court observed these jurors throughout voir dire and reasonably concluded that their silence in response to the court's and defense counsel's questions confirmed that they would obey the instructions regarding Clemens's right not to testify. In particular, we note that the venire was highly responsive to group questioning throughout voir dire. Many jurors, including Jurors 7, 10, and 12, volunteered answers to questions posed to the entire panel. Jurors 7, 10, and 12 were not hesitant to express their opinions even when they disagreed with the attorneys or the judge. Thus, the trial court fairly attributed their silence to their willingness to follow the law as instructed by the court as opposed to a fear of speaking up.

¶23 Based on the prospective jurors' conduct throughout voir dire, the trial court reasonably distinguished Jurors 7, 10, and 12 from other jurors who reiterated that they would struggle to follow the court's instruction regarding the right not to testify. Specifically, when the court asked the panel whether "anyone" would find Clemens guilty because he did not testify, even if the prosecution did not present enough evidence to prove its case, Juror 25 repeated his belief that the defendant had something to hide and must be guilty if he did not testify. This demonstrates that Juror 25 felt free to continue to disagree with the law, whereas Jurors 7, 10, and 12 did not express

hesitation to follow it. Furthermore, after defense counsel followed up—asking, "[B]ased on [the court's explanation], is there anybody back here, some hands were raised before, who nevertheless you've been hearing what the Judge had to say, still feels that if you don't hear from Mr. Clemens that would be a problem for you reaching a verdict of not guilty in this case?"—Jurors 47 and 48 volunteered that they would be unable to acquit a defendant who did not testify; conversely, Jurors 7, 10, and 12 did not respond to defense counsel's inquiry. Indeed, defense counsel specifically called on the jurors who had previously said that they would have difficulty following this aspect of the law to answer; still, Jurors 7, 10, and 12 remained silent and, significantly, did not follow the lead of Jurors 47 and 48. Because the voir dire record demonstrates that Jurors 7, 10, and 12 responded affirmatively to questions when applicable to them, their silence is reasonably construed as a willingness to follow the court's instructions.

¶24 In sum, Jurors 7, 10, and 12 actively expressed their opinions and participated with the court and counsel during the entire voir dire, yet they remained silent when the court and defense counsel both asked questions that called for a response only if a juror still felt that he could not follow the law honoring a defendant's right not to testify. Thus, when viewed in context, their silence was the appropriate response to indicate that they no longer held that opinion. Accordingly, in light of the totality of the circumstances, the record supports the trial court's conclusion that the challenged jurors were rehabilitated by the court's and counsel's legal explanations and further questioning. The judge, who was in a superior position to make this judgment, was within her discretion in concluding as much. See People v. Vecchiarelli-McLaughlin,

984 P.2d 72, 76 (Colo. 1999) (emphasizing the trial court's role in making rehabilitation determinations).

## IV. Conclusion

¶25    We hold that a prospective juror's silence in response to rehabilitative questioning constitutes evidence sufficient to support a trial court's conclusion that the juror has been rehabilitated when, in light of the totality of the circumstances, the context of that silence indicates that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.  We conclude that the context surrounding the challenged prospective jurors' silence in this case supported the trial court's conclusion that they had been rehabilitated, meaning that the trial court did not abuse its discretion in denying Clemens's challenges for cause.  Accordingly, we reverse the judgment of the court of appeals.

**JUSTICE HOOD** dissents, and **JUSTICE MÁRQUEZ** and **JUSTICE GABRIEL** join in the dissent.

14

JUSTICE HOOD, dissenting.

¶26    Jurors 7, 10, and 12 all indicated reluctance to apply the law protecting a defendant's constitutional right to remain silent at trial, even after the trial court had instructed them about how they must apply that right.

¶27    In the absence of effective rehabilitation, then, these jurors should have been disqualified.  The majority does not seem to disagree.  See maj. op. ¶ 21 ("Thus, when the jurors at issue here answered 'yes' to defense counsel's question of whether they would have difficulty following the court's instruction to the contrary, they required rehabilitation in order to serve on the jury.").

¶28    So, the question becomes whether these jurors' silence alone constitutes evidence of effective rehabilitation.  Put differently:  Should we allow trial courts to keep such jurors based on questionable inferences about what their silence means?  Or should we simply require trial courts to ask each reluctant juror after further admonition whether the juror can apply the law as that juror has been instructed?

¶29    I vote for the latter.  While the majority's approach arguably has the virtue of greater efficiency, that efficiency in my estimation comes at too high a cost, particularly when a constitutional right is at stake and there is a safer approach that requires so little more.  Because I believe a defendant's right to an impartial jury is too fundamental to our criminal-justice system to be left to guesswork about the meaning of a juror's silence, I would affirm the division's judgment and require the trial court to find that a juror who has taken a disqualifying position has affirmatively retreated from that position.  Because there was no such affirmative retreat here, I respectfully dissent.

1

# I. Analysis

¶30    The majority's reliance on <u>People v. Young</u>, 16 P.3d 821 (Colo. 2001) seems misplaced.  <u>Young</u> is not a pure silence case.  On the contrary, the juror at issue there amended his views during the very kind of follow-up questioning I advocate here.  <u>Id.</u> at 825.  While the court referenced the juror's failure to disagree with the statement of law at issue, that reference came after our emphasis of a much more revealing colloquy with the juror.  In other words, there was silence <u>plus</u> specific discussion.  Therefore, the majority today takes us well beyond <u>Young</u>.

¶31    Regardless, there are at least three reasons courts should not rely solely on jurors' silence for rehabilitation, which Judge Webb articulated well in the opinion below.  I turn to those now.

¶32    First and foremost, as I've already mentioned, the right to an impartial jury is too fundamental to leave to speculation.  Both the United States Constitution and the Colorado Constitution guarantee the right to an impartial jury.  U.S. Const. amend. VI; Colo. Const. art. II, § 16.  In order for a jury to be impartial, it must demonstrate a willingness to follow the law—including, above all, the law concerning the defendant's core constitutional protections.  <u>See</u> <u>Young</u>, 16 P.3d at 824.  The Supreme Court has explained that the Fifth Amendment's privilege against self-incrimination "reflects many of our fundamental values and most noble aspirations." <u>Carter v. Kentucky</u>, 450 U.S. 288, 299 (1981) (citation omitted); <u>see</u> U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . .").  When jurors have expressed an inability to afford the defendant such a bedrock

2

constitutional safeguard, "[m]ere silence does not sufficiently protect" the right to an impartial jury. People v. Clemens, 2013 COA 162, ¶ 26, ___ P.3d ___.

¶33 Second, "silence in the face of group questions does not force jurors to engage in [the] type of critical self-reflection" necessary to confront their predispositions. Id. at ¶ 28; see People v. Arnold, 753 N.E.2d 846, 852 (N.Y. 2001). Keep in mind, we're not discussing jurors who think criminal law works one way (i.e., we should hear "both sides") and merely need to be instructed that it actually works a different way. See maj. op. ¶¶ 16–17. In individual exchanges with each of these three jurors, defense counsel correctly reiterated how the law works—echoing the court's initial admonition that they could not use the defendant's refusal to testify as an inference of guilt—and immediately afterwards asked if the juror would have concerns about following that law. Each juror answered in the affirmative. Group admonition is no solution to this problem, because these jurors may not even know themselves whether they can properly apply the law without first going through the exercise of talking about it. At the very least, such jurors should be politely confronted and asked to confirm that they can apply the law, or they should be excused.

¶34 Third, jurors' silence gives too little for a trial court to assess and for an appellate court to review. See Clemens, ¶ 29. I agree with the majority that the trial court is in a superior position to gauge jurors' demeanor and tone, maj. op. ¶ 24, but when jurors sit silently in response to group questions, what is there to gauge? Were this a case where the trial court noted that these jurors nodded their heads, or even stared pensively, we

3

might have a more meaningful conversation about whether these jurors had embraced the court's mandate. But here we do not even have that.

¶35 Instead, we are left to surmise what these jurors may have been thinking based on interactions during other parts of voir dire. I fear this exercise is too speculative for a trial judge sitting in the room, let alone a reviewing court with a cold record. Indeed, the record before us highlights the problem. Each of the three jurors' problematic statements was made in response to a group question by defense counsel. But beyond that question, Juror 10 never responded to any other group question. Juror 7 responded to only one other group question during the entire voir dire, and that question was purely factual (Have you ever been involved in a court case?). From this, the majority finds that the three jurors "actively expressed their opinions and participated with the court and counsel during the entire voir dire." Maj. op. ¶ 24. I would categorize their participation differently. And this is the source of my concern—it seems that a juror's likeliness to respond to challenging group questions is largely in the eye of the beholder.

¶36 Finally, I think the majority overestimates the willingness of jurors to share information. After all, how much forthrightness can we really expect after jurors have been admonished in front of a group of strangers? Even if the lawyers and the judge succeed in quickly cultivating an environment in which jurors feel more at ease in expressing their views, most will remain intimidated. See United States v. Hill, 552 F.3d 541, 548 (7th Cir. 2008). Common experience teaches us that most people fear public speaking. Most have little or no experience in a courtroom. Most know little

4

about the law, other than the need to show deference to the person wearing the robe. See <u>Starr v. United States</u>, 153 U.S. 614, 626 (1894) ("It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling."). If the robed authority figure interjects and lectures the entire venire, does common sense suggest that most people listening would be eager to throw up a hand and persist in disqualifying views? Probably not (unless that person is seeking to avoid jury service altogether). In point of fact, after the judge here lectured about the Fifth Amendment and asked if anyone would still have difficulty abiding it, two jurors—numbers 47 and 48—who would later admit such difficulty (to defense counsel), remained silent.

¶37 At the very least, then, it seems trial courts should individually question jurors like Jurors 7, 10, and 12 about their disqualifying statements and require an affirmative retreat from those statements. <u>Clemens</u>, ¶ 27; <u>see also</u> <u>Arnold</u>, 753 N.E.2d at 852 ("[N]othing less than a personal, unequivocal assurance of impartiality can cure a juror's prior indication that she is predisposed against a particular defendant or particular type of case.").

## II. Conclusion

¶38 Because these jurors did not affirmatively retreat from a disqualifying position, I would hold that the trial court erred, which takes us to the other question on certiorari: whether such an error is reversible. Like the majority, I will not reach that question.

While it certainly warrants discussion, it warrants a full-court discussion. That will have to wait for another day.

¶39    For the foregoing reasons, I respectfully dissent.

I am authorized to state that JUSTICE MÁRQUEZ and JUSTICE GABRIEL join in this dissent.