The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 23, 2018

**2018COA119**

**No. 14CA1955 People v. Lopez — Crimes — Theft; Criminal Law
— Sentencing — Crimes Against At-Risk Persons**

In this criminal case, a division of the court of appeals
interprets section 18-6.5-103, C.R.S. 2017, which enhances the
penalties for theft when any element or portion of the offense is
committed in the presence of an at-risk person. The division
concludes that "portion of the offense" as used in section 18-6.5-
103(5) means conduct taken in furtherance of the crime that occurs
in temporal proximity to an element of the offense and is physically
close to the victim. Applying this definition, the division rejects
defendant's contention that the prosecution failed to present
sufficient evidence that he committed a portion of the offense in the
presence of the victim and affirms the judgment of conviction.

COLORADO COURT OF APPEALS     **2018COA119**

Court of Appeals No. 14CA1955
Jefferson County District Court No. 13CR2662
Honorable Christopher J. Munch, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Victor Leobardo Trejo Lopez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE NIETO*
Taubman and Harris, JJ., concur

Announced August 23, 2018

Cynthia H. Coffman, Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel K. Mercer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Defendant, Victor Leobardo Trejo Lopez, appeals the trial court's judgment entered on a jury verdict finding him guilty of theft from an at-risk adult.  We affirm.

## I.    Background

¶ 2    Defendant and the victim had been neighbors in a mobile home park.  In August 2013, defendant visited the victim in his small fifth wheel travel trailer.  It was estimated to be eight feet wide and thirty feet long.  He asked the victim if he could borrow some money; the victim said no.  Defendant asked if he could use the bathroom, which was adjacent to the living room where the victim was sitting and watching television.  The victim's gun was hanging on the wall in the bathroom.  Defendant put the gun in his backpack and came out to the living room.  He told the victim he needed to go, and he left the trailer.  At the time of the visit, the victim was seventy years old.

¶ 3    The victim later learned the gun was missing and reported it to the police.  The victim said defendant was the only other person who had been inside his house recently.  The day after the victim made the police report, he asked defendant where his gun was.  Defendant apologized and said he did not mean to steal the gun,

but that he did not know where the gun was.  Defendant later admitted to the police that he had stolen the gun from the victim.

¶ 4     Defendant was charged with theft and a statutory enhancer for either committing the theft with knowledge the victim was over seventy years old and therefore an at-risk elder, under section 18-6.5-103(5.5), C.R.S. 2015, or committing the theft within the victim's presence, under section 18-6.5-103(5), C.R.S. 2017.[1]  At trial, defendant admitted he took the victim's gun and committed theft, but he argued that neither statutory enhancer should apply. The jury convicted defendant of theft from an at-risk adult under section 18-6.5-103(5), finding that he committed an element or portion of the offense in the presence of the victim.  The trial court sentenced him to one year of probation.

## II.    Juror Challenge

¶ 5     Defendant contends the trial court erred when it denied his challenge for cause to prospective juror H.S.  Because H.S.

---

[1] While the complaint alleges two separate counts of theft, the trial court clarified with the prosecution and defense that only one count of theft would be submitted to the jury, with two possible enhancers.

ultimately sat on the jury, defendant argues that reversal is required. We disagree.

### A. Standard of Review

¶ 6      We review the trial court's denial of a juror challenge for cause for an abuse of discretion. *See, e.g., People v. Bondsteel*, 2015 COA 165, ¶ 77 (*cert. granted* Oct. 31, 2016). We review the entire voir dire of the prospective juror to determine whether the trial court abused its discretion. *People v. Friend*, 2014 COA 123M, ¶ 21 (citing *Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999)) (*cert. granted on other grounds* Feb. 8, 2016). We defer to the trial court's credibility assessments, "recognizing that court's unique perspective in evaluating the demeanor and body language of live witnesses." *People v. Conyac*, 2014 COA 8M, ¶ 13. If the trial court permitted a biased or incompetent juror to sit on the jury and participate in determining the defendant's guilt, the defendant's right to an impartial jury has been violated and reversal is required. *People v. Maestas*, 2014 COA 139M, ¶ 20; *People v. Marciano*, 2014 COA 92M-2, ¶ 10.

## B.  Law

¶ 7    The United States and Colorado Constitutions guarantee criminal defendants the right to a trial by an impartial jury.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16.  Thus, the trial court must sustain a challenge for cause if, as relevant here, there exists

> a state of mind in the juror evincing enmity or bias toward the defendant or the state; however, no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

§ 16-10-103(1)(j), C.R.S. 2017.

¶ 8    It is normal for a prospective juror to arrive for jury duty without knowing the relevant law and with some preconceived expectations.  *People v. Clemens*, 2017 CO 89, ¶ 17.  If, after the trial judge explains the correct legal principles during voir dire, and the prospective juror is willing to apply the law as instructed by the court, the prospective juror is rehabilitated and may serve.  *Id.*  A court may consider the prospective juror's assurances that he or

she can fairly and impartially serve on the case. *People v. Gilbert,* 12 P.3d 331, 334 (Colo. App. 2000). Even a prospective juror's silence in response to questions posed to the venire can be sufficient evidence of rehabilitation after the prospective juror has indicated a preconceived notion. *Clemens,* ¶ 12.

### C.    Analysis

¶ 9    Before voir dire, the trial court informed the jury that the parties had stipulated that defendant committed the basic elements of theft, but that defendant disputed the enhancers. The court instructed the jury about general principles of applicable law, including the presumption of innocence and the burden of proof. The court asked the jury, "Does anybody disagree with the basic concept that in a criminal case there has to be proof beyond a reasonable doubt?" No juror expressed any disagreement.

¶ 10    The trial court next addressed each individual juror and asked, "Do you think you can give us the assurance that you will be fair to both sides?" H.S. replied, "I will be fair to both sides."

¶ 11    During defense counsel's questioning of H.S., she expressed confusion about the presumption of innocence since defendant had admitted the theft. The following exchange took place:

[H.S.]: I'm confused because he isn't innocent because he did steal the gun. I know that he's guilty of a crime, and that is dealing with guns, which I don't agree with. And then stealing, which is a bad crime as well.

So that is a little contradictory.

[Defense Counsel]: I think you're totally right. It's a hard distinction to sort of admit to one piece because he said, Yeah, I'm guilty of this one issue, this theft issue. But, no, I'm not guilty of these other – the Judge calls them aggravators or enhancers.

I think that's a difficult thing to separate out. Do you think that's something you're going to be able to do that you can presume him innocent of sentence enhancers, knowing that he is guilty of something?

[H.S.]: Um, well, I don't know because I didn't know that ever happened. Like, I wouldn't see someone who did a crime as an innocent person because I didn't know that you can separate out enhancers before.

¶ 12    The juror's answers to additional questions from defense counsel continued to show confusion. When defense counsel asked directly if she could afford defendant the presumption of innocence, H.S. did not say that she could not or would not do so, but said, "It's hard." Her difficulty appears to have arisen from defendant's admission to committing theft and not from any hostility to the concept of the presumption of innocence:

6

[Defense Counsel]: So you -- I don't want to make – I don't want to be confusing. So we already know he's guilty of the theft.

And you're saying, Well, no, I can't presume him innocent of the enhancers as well?

[H.S.]: At this moment in time, no, but as I learn more about it, I could.

¶ 13     Defense counsel also questioned H.S. at length about her opinions concerning guns:

[Defense Counsel]: The other thing you said is the gun thing, and that doesn't sit well with you.

[H.S.]: No. I've grown up in a really anti-gun family. So I just think that they're not good.

. . . .

[Defense Counsel]: So in the back of your mind you already think that he's kind of in a bad spot with you?

[H.S.]: Uh-huh.

[Defense Counsel]: So it sounds like it's going to be difficult to afford him the presumption of innocence because of this weird breakdown, but also that he is starting off in a bad position with you as well?

[H.S.]: Uh-huh.

7

¶ 14     Defense counsel challenged H.S. for cause because she seemed confused about the presumption of innocence and expressed anti-gun views.

¶ 15     The trial court properly rehabilitated H.S. on both issues. Acknowledging H.S.'s views on the laws about guns and protecting people from guns, the court asked her if she believed she could be fair and objective in deciding the facts even though a gun was involved in this case. H.S. answered that "it's my duty to get over that fact. So it will just take me a little bit of time, but I mean, I would do that because I have to." The court asked if she was comfortable that she could, and she replied, "I'm not comfortable, but I know I can." The trial court then conducted rehabilitative questioning about H.S.'s feelings about guns and how they would affect her ability to serve as a juror. H.S. affirmatively assured the judge that she could be fair and impartial, despite her personal opinions about guns. Thus, the trial court did not abuse its discretion in denying defendant's challenge for cause to H.S. on this ground.

¶ 16     While the court did not question H.S. individually about her comments on the presumption of innocence, it asked the venire:

> Is there anybody else, other than these two people [referring to two other prospective jurors who could not set aside their bias] . . . who feels that they couldn't be fair to both sides and decide this case just on the facts?
>
> I know some of you don't like the arbitrary cut-offs. Some of you have other issues with the law. But *we have to take the law as it is* and find the facts honestly and openly.
>
> Is there anybody else that really feels that they don't think they could do that? Anybody else? I don't mean to try to be - - I really want to know if anybody feels that way.

(Emphasis added.) H.S. remained silent.

¶ 17    In her responses to questioning, H.S. expressed some concern with the difficulty of applying the presumption of innocence in this case, where defendant had already admitted he committed the crime of theft. While she said it would be hard to apply the presumption to the enhancers, and that she did not know if she could apply the presumption properly, she also expressed that as she learned more about the law, she could apply it. Her comments reveal confusion rather than evince a bias or inability to follow and apply the law; they reflect her careful consideration of the seemingly contradictory application of the presumption of innocence where the defendant has, in part, admitted to the charged offense. Her

9

silence, in response to the court's final questioning of the panel asking any juror who did not feel he or she could be fair and apply the law to the facts of the case to affirmatively respond, sufficiently rehabilitated her on this ground. This juror was articulate in explaining her views; when she did not respond to the court's final questions, it was reasonable for the court to conclude that she would follow the law, including the presumption of innocence on which the court had previously instructed. *See Clemens*, ¶ 12. This conclusion is supported by H.S.'s recognition of her duty to be fair and objective when discussing her views on guns.

¶ 18     Accordingly, the trial court did not abuse its discretion when it denied defendant's challenge for cause to H.S.

### III.     Sufficiency of the Evidence

¶ 19     Defendant contends the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he committed any element or portion of the theft in the presence of the victim. We disagree.

### A.     Standard of Review

¶ 20     We review the sufficiency of the evidence de novo. *Oram v. People*, 255 P.3d 1032, 1038 (Colo. 2011) (citing *Dempsey v. People*,

117 P.3d 800, 807 (Colo. 2005)). "In so doing, we must view the evidence in the light most favorable to the prosecution and consider whether it is sufficient to support the defendant's guilt beyond a reasonable doubt." *Id.*

¶ 21    We review questions of law involving statutory interpretation de novo. *People v. Griego*, 2018 CO 5, ¶ 25. "[W]e interpret the plain language of the statute to give full effect to the intent of the General Assembly. When the statutory language is clear, we apply the plain and ordinary meaning of the provision." *Id.* (citation omitted). "We may discern the plain meaning of statutory language by referring to its common dictionary meaning." *Abu-Nantambu-El v. State*, 2018 COA 30, ¶ 9. "In doing so, we give consistent, harmonious, and sensible effect to each part of the statute, and we interpret every word, rendering no words or phrases superfluous and construing undefined words and phrases according to their common usage." *Griego*, ¶ 25. We must avoid statutory "interpretations that render statutory provisions superfluous." *Welby Gardens v. Adams Cty. Bd. of Equalization*, 71 P.3d 992, 995 (Colo. 2003).

## B.    Law

¶ 22    Any person who commits theft as described in section 18-4-401(1), C.R.S. 2017, and commits any element or portion of the offense in the presence of the victim, when the victim is an at-risk person, commits a class 5 felony if the value of the thing involved is less than five hundred dollars.  § 18-6.5-103(5).  The definition of "at-risk person" includes "at-risk adult," § 18-6.5-102(4.5), and any person who is seventy years of age or older is an "at-risk adult."  § 18-6.5-102(2), C.R.S. 2017.

## C.    Analysis

¶ 23    Defendant moved for a judgment of acquittal, arguing that the prosecution did not prove that he committed an element or portion of the theft in the victim's presence.  The trial court noted that defendant was not in the victim's presence when he took the gun in the bathroom because he was in a different room separated by a wall from the living room of the travel trailer.  However, the trial court concluded that when defendant left the bathroom and walked merely a few feet away from the victim as he left the trailer, defendant was committing a portion of the theft in the victim's presence.

12

¶ 24     Neither section 18-6.5-103 nor its related statutes define

"element," "portion of the offense," or "presence."  The meaning of

"element" is clear.  It means a component part of a crime as defined

in a statute that criminalizes certain defined conduct.  *See, e.g.,*

*People v. Hill*, 934 P.2d 821, 829 (Colo. 1997) (defining elements of a

crime as "those constituent parts of a crime which must be proved

by the prosecution to sustain a conviction" (quoting Black's Law

Dictionary 520 (6th ed. 1990))).

¶ 25     "Presence" is a word with a commonly accepted meaning.  In

the context of this statute, "presence" is defined in Webster's Third

New International Dictionary 1793 (2002) as

- "the condition of being within sight or call, at hand, or in

  a place being thought of";

- "the fact of being in company, attendance, or

  association";

- "the state of being in front of or in the same place as

  someone or something";

- "the vicinity of or the area immediately near one"; and

- "the place in front of or around a person."

We need not reach the question of whether defendant's conduct in the bathroom of this very small structure constituted a crime in the presence of the victim because the evidence was clear that a "portion of the offense" occurred in the presence of the victim.

¶ 26    Determining the meaning of "portion of the offense," as used in the statute, is not easy. We can look to the legislative declaration for help in interpreting legislative intent. *People v. Nardine*, 2016 COA 85, ¶¶ 24-25 (interpreting section 18-6.5-103 by reference to the legislative declaration).

¶ 27    In the legislative declaration for title 18, article 6.5, concerning "Wrongs to At-risk Adults," the General Assembly recognized that fear of mistreatment is a major concern to at-risk persons and that at-risk persons are more vulnerable to and disproportionately damaged by crime, abuse, exploitation, and neglect. § 18-6.5-101, C.R.S. 2017. The General Assembly noted that at-risk persons are more vulnerable than the general population and disproportionately impacted by crime "because they tend to suffer great relative deprivation, financially, physically, and psychologically." *Id.* Some are not "equipped to protect themselves or aid in their own security." *Id.*

¶ 28    There is no indication in the legislative declaration or section

18-6.5-103 that the victim's awareness of the theft is required.

Thus, in interpreting the term "portion of the offense" we will take a

broad view of the meaning to implement the legislature's intention

to provide greater protection to at-risk persons.

¶ 29    In *Johnson v. People*, 171 Colo. 505, 506, 468 P.2d 745, 746

(1970), the only Colorado case we found using the term "portion of

the crimes," the supreme court used the term to describe the

testimony of a witness in a burglary and larceny case.  The "portion

of the crimes" the witness testified about was as follows:

- She saw the defendant approach and break a window in her
  front door.

- She saw the defendant return to his automobile, which was
  parked on the street.

- She saw the defendant converse with another man in the
  automobile.

- She saw the defendant again approach her front door.

- She ran from her home and shortly thereafter saw the
  defendant and the other man drive away with a television set
  in the trunk of the automobile.

15

¶ 30    None of these facts describe an element of the crimes charged, but they do describe events that were part of the perpetration of the crimes.

¶ 31    Turning to the facts of this case, we note that defendant argues that the theft, as defined in section 18-4-401, was completed when defendant took possession of the gun in the bathroom and outside the presence of the victim. Defendant's argument focuses on the elements of the theft offense. But the General Assembly, by using both the terms "element" and "portion of the offense" in section 18-6.5-103, intended to include conduct that was not necessarily part of the elements of the offense. *See Griego,* ¶ 25.

¶ 32    Considering the use of the term "portion of the crimes" in *Johnson,* 171 Colo. 505, 468 P.2d 745, and the legislature's intent to expand the protection for at-risk persons, we conclude that "portion of the offense" in section 18-6.5-103(5) means conduct taken in furtherance of the crime that occurs in temporal proximity to an element of the offense and is physically close to the victim.

¶ 33    Here it is undisputed that, immediately after taking possession of the gun, defendant was in the same room with the victim and spoke with him before leaving with the gun. Therefore, we conclude

16

that sufficient evidence was presented to support the jury's conclusion beyond a reasonable doubt that defendant committed at least a portion of the theft within the presence of the victim.

## IV. Jury Instruction

¶ 34 Defendant contends the trial court erred when it rejected his tendered jury instruction and declined to give the jury an instruction defining "presence." We disagree.

## A. Standard of Review

¶ 35 The trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions. *Cassels v. People*, 92 P.3d 951, 955 (Colo. 2004). "We review de novo the question of whether a jury instruction accurately informed the jury of the governing law." *People v. Carbajal*, 2014 CO 60, ¶ 10. If the jury instructions properly inform the jury of the law, the trial court has "broad discretion to determine the form and style of jury instructions." *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011); *see also People v. Trujillo*, 2018 COA 12, ¶ 11. Thus, we review the trial court's decision regarding a proposed jury instruction for an abuse of

discretion.  *Trujillo*, ¶ 11.  We will not disturb the ruling unless it is manifestly arbitrary, unreasonable, or unfair.  *Id.*

### B.  Law and Analysis

¶ 36  Both parties tendered instructions proposing definitions for "presence" to the trial court.

¶ 37  Defendant's tendered instruction stated: "Property is taken from the 'presence' of another when the property is 'so within the victim's reach, inspection, or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim.'"  Defendant argued that the court should have used this definition because it was taken from the robbery, kidnapping, and aggravated motor vehicle theft statutes.

¶ 38  The prosecution's instruction said: "Property is considered taken from the presence of the victim even if the victim is in one room while property located in another room is removed."

¶ 39  The trial court declined to give either instruction.  It ruled that "presence" was an ordinary word, and the jurors were capable of applying the word in its ordinary usage.  It further noted that the definition tendered by the defense was incorrect because neither the

theft nor at-risk victim statute requires that a defendant use force, threats, or intimidation.

¶ 40     We agree with the trial court.  Defendant's tendered instruction included a requirement for force, threats, or intimidation not found in section 18-6.5-103(5).  Providing the jury with defendant's instruction that required proof of additional elements not found in the charged crime would not have accurately instructed it on the law of theft from an at-risk adult.  While defendant argued that the court should adopt the definition because it was included in statutes governing other crimes against property and persons such as robbery, aggravated motor vehicle theft, and kidnapping, this assertion was incorrect.  The statutes for those crimes do not include such a definition; rather it appears in a supreme court case interpreting the robbery statute.  *People v. Bartowsheski*, 661 P.2d 235, 244 (Colo. 1983).  We also note that interpreting one statute by referencing an unrelated statute is not a reliable means of ascertaining legislative intent.  *Bertrand v. Bd. of Cty. Comm'rs*, 872 P.2d 223, 228 (Colo. 1994).

¶ 41     To the extent that defendant argues that the trial court erred in failing to give the jury an instruction providing an alternative

definition of presence, we also disagree. "When a term, word, or phrase in a jury instruction is one with which reasonable persons of common intelligence would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors' minds as to its meaning, an instruction defining it is not required." *People v. Harris*, 2016 COA 159, ¶ 98. "When definitions are not provided in a jury instruction, the jury is presumed to employ the common meaning of the words used." *People v. Walden*, 224 P.3d 369, 379 (Colo. App. 2009). The term "presence" is a common word the jury was capable of understanding, and the jury did not indicate any confusion about the term or ask the trial court for further clarification. *See Harris*, ¶ 99.

¶ 42    Thus, the trial court did not abuse its discretion when it rejected defendant's tendered instruction on "presence" and declined to issue an alternate instruction defining the term.

## V.    Conclusion

¶ 43    The judgment is affirmed.

JUDGE TAUBMAN and JUDGE HARRIS concur.