22CA1153 Peo v Ojeda 02-27-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1153
City and County of Denver District Court No. 20CR2166
Honorable Ericka F.H. Englert, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Amadeus J. Ojeda,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Brown and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 27, 2025

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Cynthia A. Harvey, Alternate Defense Counsel, Aurora, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Amadeus J. Ojeda, appeals the district court's judgment entered on a jury verdict finding him guilty of second degree assault with a deadly weapon as an act of domestic violence. We affirm.

## I.     Background

¶ 2     Ojeda was arrested after police received an early morning disturbance call from one of Ojeda's neighbors.  After interviewing Ojeda's wife — the victim of the assault — the police concluded that Ojeda and his wife had an argument in the kitchen, during which Ojeda grabbed a hammer and struck his wife several times on her head and arms, causing visible lacerations.

¶ 3     A jury found Ojeda guilty of assault in the second degree with a deadly weapon as an act of domestic violence.  The district court sentenced him to ninety days in jail and two years of probation.

## II.     Discussion

¶ 4     Ojeda contends that prospective jurors A and D — both of whom ultimately served on the jury — showed disqualifying bias in their answers during voir dire, and the district court erred by denying his counsel's challenges for cause to these prospective jurors.  We disagree as to both jurors.

## A.    Standard of Review

¶ 5    Trial courts have "discretionary authority over the conduct and the scope of the voir dire examination." *People v. Garcia*, 2022 COA 144, ¶ 14 (quoting *People v. Flockhart*, 2013 CO 42, ¶ 37).  So "[w]e review a trial court's ruling on a challenge for cause to prospective jurors for an abuse of discretion." *People v. Clemens*, 2017 CO 89, ¶ 13.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair or if it misapplies the law.  *People v. Montoya*, 2024 CO 20, ¶ 47.

¶ 6    In determining whether the court abused its discretion, we review the entire voir dire.  *People v. Samuels*, 228 P.3d 229, 242 (Colo. App. 2009) (citing *Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999)).  In doing so, however, we defer to the district court's assessment of a prospective juror's credibility and refrain from second-guessing the court based on the cold record.  *Clemens*, ¶ 13.

## B.    Applicable Law

¶ 7    "Both the United States and Colorado Constitutions guarantee criminal defendants the right to a trial by an impartial jury."  *Id.* at ¶ 15 (first citing U.S. Const. amends. VI, XIV; and then citing Colo. Const. art. II, § 16).  "Procedures for preventing biased jurors from

serving are critical to the protection of the defendant's right to an impartial jury." *Clark v. People*, 2024 CO 55, ¶ 2 (citing *Georgia v. McCollum*, 505 U.S. 42, 58 (1992)). "A trial court must grant a challenge for cause if a prospective juror is unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions." *Morrison v. People*, 19 P.3d 668, 672 (Colo. 2000); *accord People v. LePage*, 397 P.3d 1074, 1081 (Colo. App. 2011), *aff'd on other grounds*, 2014 CO 13; *see also* § 16-10-103(1)(j), C.R.S. 2024; Crim. P. 24(b)(1)(X).

¶ 8    But the mere possibility that a prospective juror may have said something indicating a possible bias against the defendant doesn't necessarily require dismissal of the juror, provided the prospective juror agrees "to set aside any preconceived notions and make a decision based on the evidence and the court's instructions." *Flockhart*, ¶ 36 (quoting *People v. Lefebre*, 5 P.3d 295, 301 (Colo. 2000)). Accordingly, the district court "may properly consider 'a prospective juror's assurance that he or she can fairly and impartially serve on the case.'" *LePage*, 397 P.3d at 1081 (quoting *People v. Drake*, 748 P.2d 1237, 1243 (Colo. 1988)). The court

must, however, grant a challenge when "a potential juror's statements compel the inference that he or she cannot decide crucial issues fairly . . . in the absence of rehabilitative questioning or other counter-balancing information." *People v. Merrow*, 181 P.3d 319, 321 (Colo. App. 2007); *see Vigil v. People*, 2019 CO 105, ¶¶ 11, 24 (section 16-10-103(1)(j) requires a court to remove prospective jurors who show actual enmity or bias against the defendant or the State).

## C. Analysis

### 1. Juror A

¶ 9 Ojeda contends that Juror A showed bias warranting dismissal because she said (1) men are generally more likely to commit domestic violence than women, and (2) she would be "more likely" to believe a hypothetical victim's initial report of abuse over a later contradictory report. We disagree.

#### a. Juror A's Statements and the Court's Ruling

¶ 10 During voir dire, Ojeda's counsel asked Juror A whether "men are more likely to commit domestic violence." She said, "Yes." When asked why, she explained, "[B]ecause of stories I've heard and statistics that I've heard in the media." But Juror A also said that

4

she didn't believe Ojeda in particular was more likely to commit domestic violence just because he was a man; rather, men, "in general, are."

¶ 11    Ojeda's attorney also asked Juror A, "[W]ould you be more likely to believe [a victim of domestic abuse's] first story or her second story?"  Juror A, indicating that she would be more likely to believe the first story, explained, "Statistically speaking, I know that that is a common occurrence.  I know that women facing abuse are often abused many, many times before they come forward, and it's a really typical thing to do."

¶ 12    Ojeda's counsel followed up, "What if there was *no physical evidence* to support the first story.  Would you still believe it more just because it was the first story?"  (Emphasis added.)  Juror A replied, "I think I would be a little bit biased for that because it's hard to have evidence in these sort of situations."

¶ 13    Ojeda's counsel then asked Juror A, "If there's *not any evidence* supporting the first story, would you expect me or [co-counsel] or Mr. Ojeda to tell you why someone would not tell the truth?  (Emphasis added.)  Juror A said she knew Ojeda wasn't obligated to produce any evidence and then said,

> I think a question I have here is the difference between what we can use, as a jury, with evidence versus what we hear from witnesses. Because I think in a case like this, what we hear from a witness might be more . . . there might be more learned from a witness than from hard evidence.

¶ 14      Earlier, Juror A had confirmed that she was comfortable affording Ojeda the presumption of innocence and holding the prosecution to its burden of proof and that she wouldn't let a female friend's experience with domestic violence affect her decision.

¶ 15      The district court denied Ojeda's counsel's challenge for cause to Juror A after concluding that she "would provide Mr. Ojeda the presumption of innocence" because "she does not presume that Mr. Ojeda is more likely to have committed this crime given that he is a man . . . [and] said she would follow the law."

### b.    Application of the Law

¶ 16      The district court didn't abuse its discretion.  Nothing in Juror A's statements showed that she was "unwilling or unable to accept the basic principles of criminal law and to render a fair and impartial verdict based upon the evidence admitted at trial and the court's instructions." *Morrison*, 19 P.3d at 672.  Indeed, Juror A confirmed that she didn't harbor any bias against Ojeda personally

6

despite her belief that men are more likely than women to commit domestic violence.  And she indicated that she was open to following the court's instructions based on the evidence.  *See Flockhart*, ¶ 36.

¶ 17     As for Juror A's answers concerning the first report/recantation hypothetical, the details of the initial hypothetical were unclear, and counsel later changed the facts more than once.[1]  As the district court noted, Juror A said that she didn't fully understand what she could or couldn't consider when weighing evidence.  We aren't persuaded that the court abused its discretion by crediting Juror A's statement that she could follow the law, particularly in light of the rather confusing exchange regarding counsel's hypothetical and the fact Juror A hadn't yet been instructed as to how she could consider different types of evidence.

¶ 18     Ojeda's reliance on *People v. Hancock*, 220 P.3d 1015, 1017-20 (Colo. App. 2009), *overruled on other grounds by People v. Novotny*, 2014 CO 18, is misplaced.  In *Hancock*, a prospective juror said he

---

[1] Ojeda's counsel first set up the hypothetical with no mention of evidence, then changed it to involve no physical evidence, then — in a question focused on Ojeda's burden to produce evidence — changed it to involve no evidence at all.

believed it was defense counsel's job to prove that his client wasn't guilty. *Id.* But Juror A confirmed that she understood the prosecution's burden of proof and that Ojeda didn't have any burden.

## 2. Juror D

¶ 19 Ojeda next contends that the district court erred by denying his counsel's challenge for cause to Juror D because Juror D said (1) he had personal experience with domestic abuse; (2) people with prior convictions might be less trustworthy than those without criminal convictions; and (3) he would want to judge credibility by looking a witness in the eyes. We reject these contentions.

### a. Juror D's Statements and the Court's Ruling

¶ 20 Juror D told the prosecutor that his ex-wife was a victim of domestic violence in her previous marriage. He said that her experience was severe, had a lasting impact on her, and affected her marriage to him. But when the prosecutor asked if this experience would affect his judgment in this case, Juror D replied, "Not really because it didn't happen to me personally."

¶ 21 Ojeda's counsel asked prospective jurors whether someone who had been convicted of a crime was less trustworthy (Ojeda had

a prior conviction). Juror D said he'd consider a conviction "a little bit" because someone with a conviction is "trying a little too hard maybe to prove themselves and give up and go back to the way they were." He continued, "I worked construction for 25 years and worked with a lot of individuals that went to jail for various reasons, said that they were straight and narrow, got a job. Some of them did, some of them didn't. I'm kind of 50/50 on it." When Ojeda's counsel asked him whether he would have a hard time following an instruction to assess each witness's credibility if any witness had a prior conviction, he said, "I'd have to probably see the individual in their eyes, listen to what they're saying and how they say it, how they handle themselves because that will say a lot."

¶ 22    Ojeda's counsel challenged Juror D for cause, arguing that Juror D's ex-wife's experience with domestic violence "affected their relationship severely" and, because Ojeda had a prior conviction, Juror D's statements about persons with prior convictions meant that, if Ojeda chose to testify, Juror D couldn't fairly judge his credibility.

¶ 23    The district court denied the challenge. It concluded that Juror D hadn't indicated that his ex-wife's experience with domestic

9

violence would affect his ability to fairly evaluate the evidence in this case and that Juror D's statements concerning persons with prior convictions didn't indicate that he would be unable to follow the law on assessing credibility were he to be "instructed in that regard."

### b. Application of the Law

¶ 24 Again, the district court didn't abuse its discretion. Despite Juror D's ex-wife's experience having affected him, Juror D said that experience never interfered with the trust in their relationship. In any event, Juror D confirmed that there was nothing about his ex-wife's experience that would give him concerns about being a fair juror and that he presumed Ojeda was innocent.

¶ 25 Juror D also said that a prior conviction was only one factor he would consider in determining witness credibility. Indeed, he would consider "a lot of things." And, as the People correctly point out, a prior felony conviction, if admissible as evidence, is something that a juror may lawfully consider in assessing witness credibility. *See* § 13-90-101, C.R.S. 2024 (evidence of a prior felony conviction is admissible "for the purpose of affecting the credibility of [a] witness"). A defendant isn't excepted from that rule, so

nothing Juror D said reflected an unwillingness or inability to follow the law or impermissibly "chilled" Ojeda's choice whether to testify.

## III.    Disposition

¶ 26    We affirm the district court's judgment of conviction.

JUDGE BROWN and JUDGE YUN concur.