**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Johnnie Gary MONTOYA,**
**Defendant–Appellant.**

No. 03CA0420.

Colorado Court of Appeals,
Div. II.

Oct. 7, 2004.

Certiorari Denied Jan. 10, 2005.

Ken Salazar, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Springer & Steinberg, P.C., Michael P. Zwiebel, Denver, Colorado, for Defendant–Appellant.

ROTHENBERG, J.

Defendant, Johnnie Gary Montoya, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault on a firefighter. The primary issue in this appeal is whether a person employed by a fire department, but acting solely as a paramedic, is a "firefighter" for purposes of § 18–3–203(1)(c), C.R.S.2003, the statute under which defendant was convicted. Because we conclude such a person is included within the term "firefighter," we affirm.

### I.

In 2001, officers arrested defendant for violating a restraining order. Defendant experienced pain when handcuffed because of pre-existing shoulder injuries. He began to scream during his transport to jail, and when he told officers the reason for the pain, they called for paramedics.

The victim is employed by West Metro Fire District. He identified himself to defendant as "a paramedic[ ] from the fire department," secured defendant to a bed with restraints, and took him to the hospital. After removing one of the hand restraints, defendant struck the victim in the chest in what the victim described at trial as "a glancing blow." The victim did not need medical care.

As relevant here, the victim also testified that (1) his position with the fire department is "firefighter/paramedic"; (2) his duty is to respond to emergency medical calls, fire calls, and car accidents and he has been trained to do so; (3) at all relevant times, he was dressed in a uniform, including a badge, a name tag, and a T-shirt with "West Metro Fire Rescue" printed on the back.

### II.

Defendant contends the trial court erred in not dismissing the charges against him as a matter of law. He maintains that (1) § 18–3–203(1)(c) applies only to firefighters performing fire suppression functions because they assume a significant risk only while

performing those duties; and (2) a broader interpretation of § 18–3–203(1)(c) which would include persons acting as paramedics would violate equal protection. We reject both contentions.

### A.

▪ Our primary task in construing a statute is to ascertain and give effect to legislative intent. To ascertain legislative intent, we look first to the language of the statute and its commonly accepted and understood meaning. *See People v. Schuett,* 833 P.2d 44 (Colo.1992).

Under § 18–3–203(1)(c), a person commits second degree assault if, "[w]ith intent to prevent one whom he or she knows, or should know, to be a peace officer or firefighter from performing a lawful duty, he or she intentionally causes bodily injury to any person."

As used in § 18–3–203(1)(c), "firefighter" means "an officer or member of a fire department or fire protection or fire-fighting agency of the state, or any municipal or quasi-municipal corporation in this state, whether that person is a volunteer or receives compensation for services rendered as such firefighter." Section 18–3–201(1), C.R.S.2003.

Section 18–3–201(2), C.R.S.2003, provides that a peace officer or a firefighter "engaged in the performance of his or her duties" means a peace officer or firefighter who is:

engaged or acting in, or who is present for the purpose of engaging or acting in, the performance of any duty, service, or function imposed, authorized, required, or permitted by law to be performed by a peace officer or firefighter, whether or not the peace officer or firefighter is within the territorial limits of his or her jurisdiction, if the peace officer or firefighter is in uniform or the person committing an assault upon or offense against or otherwise acting toward such peace officer or firefighter knows or reasonably should know that the victim is a peace officer or firefighter.

In *People v. Rael,* 198 Colo. 225, 597 P.2d 584 (1979), the victim was an off-duty officer and not in uniform. He witnessed a crime in progress, confronted the defendant, and was shot. The defendant contended the victim was not engaged in the performance of his duties because he was off duty and outside his territorial jurisdiction. The trial court agreed and dismissed the second degree assault charge.

The supreme court disapproved the ruling, concluding the statutory requirement that the victim be engaged in the performance of his or her duties is met "if the peace officer performs a duty, service or function merely permitted by law, as well as one mandated by his position as a law enforcement official." *People v. Rael, supra,* 198 Colo. at 227, 597 P.2d at 586. The court clarified that "[a]uthority for performance of the duty, service or function is not limited by the person's status as an on-duty peace officer." *People v. Rael, supra,* 198 Colo. at 227, 597 P.2d at 586.

We perceive no reason why *People v. Rael, supra,* should not also control the scope of a firefighter's duties, given that firefighters are listed alternatively with peace officers in § 18–3–201(2). Just as the officer in *Rael* was performing an authorized duty, the victim here was authorized to perform paramedic duties in contacting defendant. Thus, we conclude he was engaged in the performance of his duties.

Defendant also relies on § 18–8–104(1)(a), C.R.S.2003, a criminal obstruction statute that lists firefighters and emergency medical service providers separately and distinguishes between their functions. *See also* § 24–33.5–1202(4), C.R.S.2003 (defining firefighter as "any person, whether paid or a volunteer, who is actively participating in or employed by a public or private fire service unit in this state"). Here, however, it is undisputed that the victim performed the dual role of firefighter and paramedic, that he responded to emergency calls, and that he was capable of acting in either role at any given time. Hence, we need not decide whether this statute would make a difference under other circumstances.

We therefore conclude the word "firefighter" in § 18–3–201 and § 18–3–203(1)(c) en-

compasses a person like the victim here, who is employed by the fire department to respond to such emergencies as medical calls, fire calls, and car accidents. The statute is not limited to firefighters performing fire suppression functions.

### B.

◼ We also reject defendant's contention that § 18–3–203(1)(c) violates equal protection because it punishes a person who assaults a firefighter acting as a paramedic more severely than a person who assaults a nonfirefighter paramedic.

◼ The constitutional guarantee of equal protection requires that a class of crimes be based on differences that are real in fact and reasonably related to the purposes of the legislation. *People v. Marez,* 916 P.2d 543 (Colo.App.1995).

Nevertheless, in upholding § 18–3–203 against a vagueness challenge, the supreme court recognized the power of the General Assembly to create more serious classes of offenses based on differences that are real in fact and reasonably related to the purposes of the statute:

> The legislature recognized that peace officers are placed in a position of great risk and responsibility in enforcing laws, preventing crime and the myriad of other tasks they are called upon to perform. And for the legislature to invoke a special punishment for an assault upon a peace officer acting in the scope of his official duties is neither arbitrary, capricious nor unreasonable.

*People v. Prante,* 177 Colo. 243, 249, 493 P.2d 1083, 1086 (1972).

In *People v. Banks,* 9 P.3d 1125, 1128 (Colo.2000), the court also acknowledged the state's interest in increasing the penalties for crimes against peace officers and firefighters:

> [P]rotection of peace officers and firemen from crime is a major concern of our state because society depends on peace officers and firemen for protection against crime and other dangers and because peace officers and firemen are disproportionately damaged by crime because their duty to protect society often places them in dan-

gerous circumstances. Society as a whole benefits from affording special protection to peace officers and firemen because such protection deters crimes against them and allows them to better serve and protect our state.

Defendant argues that emergency services are rendered by different entities, and that the entity responding to an emergency normally is not within the control of the person needing assistance. However, all injured persons benefit from the availability of publicly funded emergency services, and firefighters acting within the scope of their broad duties are placed in a position of great risk and responsibility in performing a myriad of emergency tasks. We thus conclude the more serious class of assault created by § 18–3–203(1)(c) is based on differences that are real and are reasonably related to the purposes of the statute. In addition, the second degree assault statute requires that the accused knows or should know the person who is assaulted is a peace officer or firefighter, which distinguishes the circumstances complained of by defendant.

Therefore, we conclude defendant's right to equal protection of the law was not violated.

### III.

◼ Defendant next contends the trial court committed plain error by failing to instruct the jury on the definition of lawful duty. Again, we disagree.

◼ In the context of instructional error, plain error occurs when a review of the entire record demonstrates a reasonable possibility that the improper instruction contributed to the defendant's conviction. *People v. Garcia,* 28 P.3d 340 (Colo.2001).

Here, the jury was instructed as follows:

> The elements of the crime of Second Degree Assault are: (1) That the Defendant, (2) in the State of Colorado, at or about the date and place charged, (3) with intent to prevent one he knew or reasonably should have known to be a fireman from perform-

ing a *lawful duty*, (4) intentionally caused bodily injury to a fireman.

(Emphasis added.)

Although the instructions did not specifically define the term "lawful duty," there was no evidence presented, or argument made, suggesting the victim was not authorized to act as a paramedic. We conclude there is no reasonable probability the alleged instructional error contributed to defendant's conviction, and therefore we perceive no plain error.

### IV.

 Defendant next contends the trial court committed plain error by failing to provide the jury with an instruction defining "knowingly" as used in C.R.S. § 18-3-203(1)(c). We disagree.

Initially, we note the trial court properly instructed the jury on the mental state necessary to commit second degree assault, which is specific intent.

Defendant nevertheless argues that reversal is required because the prosecution also was required to prove defendant "knew, or reasonably should have known" the victim was a firefighter, and the terms "knew, or reasonably should have known" were not separately defined. We are not persuaded.

The jury was instructed as an element of second degree assault to determine whether defendant "knew, or reasonably should have known" the victim was a firefighter. The statute did not require the jurors to find defendant actually knew the victim was a firefighter. They were permitted to convict him using an objective standard; namely, by finding he reasonably *should have known* the victim was a firefighter. *See Lybarger v. People*, 807 P.2d 570, 578 n. 4 (Colo.1991)(the "standard of objective reasonableness is no stranger to the criminal law"; collecting cases where objective reasonableness standard applies); *Hare v. People*, 800 P.2d 1317, 1318 n. 3 (Colo.1990)(instructing jury on self-defense as to "reasonable grounds to believe"); *see also People v. Hart*, 658 P.2d 857 (Colo.1983)(discussing former version of § 18-3-203, which did not include mens rea requirement).

We therefore conclude there was no plain error.

Judgment affirmed.

Judges LOEB and CRISWELL concur.