The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 9, 2019

## 2019COA69

**No. 17CA0279, *People v. Neckel* — Civil Procedure — Process — Process Servers — Execution of Public Duty; Crimes — Trespass**

A division of the court of appeals considers whether "No Trespassing" signs render a process server a trespasser the moment he enters a property to effectuate process. Relying in part on the reasoning in *Florida v. Jardines*, 569 U.S. 1, 8 (2013), the division concludes that a sign alone does not revoke the implied license to approach the front door of a home. Although the implied license may be revoked, a process server's conduct remains statutorily privileged to the extent that it is consistent with the laws governing the execution of legal process. Therefore, a process server's entry onto a property with "No Trespassing" signs does not automatically render him a trespasser.

The division further rejects defendant's contentions that the trial court erroneously rejected his tendered jury instruction concerning the duty to retreat as it applies to the affirmative defense of defense of premises; and that the trial court should have provided supplemental instructions to the jury defining "unlawful trespass" in the context of the affirmative defense of defense of premises.

Accordingly, the division affirms the judgment.

COLORADO COURT OF APPEALS                          **2019COA69**

Court of Appeals No. 17CA0279
Larimer County District Court No. 15CR1844
Honorable Daniel J. Kaup, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Eric Alexus Neckel,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Terry and J. Jones, JJ., concur

Announced May 9, 2019

Philip J. Weiser, Attorney General, Gabriel P. Olivares, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Alan M. Lijewski, Alternate Defense Counsel, Longmont, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Eric Alexus Neckel, appeals his convictions for felony menacing and second degree criminal tampering.  He contends the trial court erred by not sua sponte correcting alleged misstatements by the victim and the prosecutor and by rejecting defense-tendered jury instructions.  We affirm.

## I.     Background

¶ 2     The People charged Neckel with felony menacing and second degree criminal tampering after he threatened a process server with a lead pipe and then jacked up the process server's car, preventing him from leaving.

¶ 3     Neckel lives in a rural area of Larimer County.  His house is set back approximately a quarter mile from a county road.  A long U-shaped driveway circles behind the house and meets the road at two points.  Neither driveway entrance is gated, and there is no fencing along the road.  There is, however, a small "No Trespassing" sign nailed to a telephone pole near one entrance.  Another similar sign is on the side of a barn behind the house.

¶ 4     A process server (the victim) drove to Neckel's house one afternoon to serve Neckel with some papers.  He parked in the

driveway and knocked on the door.  Hearing no immediate response, the victim left a note with his contact information and turned away.  As the victim was walking back toward his car, Neckel opened the door and asked the victim if he had "ever been killed."  The victim answered "no."  Neckel then asked the victim if he had "ever been shot."  The victim said "not yet."[1]

¶ 5    The victim tried to tell Neckel why he was there and asked Neckel to confirm his identity.  Rather than responding directly, Neckel began berating the victim, telling him that he had no right to be there and was trespassing, and demanding that the victim get off his land.  When the victim asked Neckel to identify himself so that he could confirm service of the papers, Neckel picked up a large metal pipe and raised it over his head.  The victim said, "[I]f you do that, it's murder."  When Neckel said "it's coming on three," the victim retreated behind his car.  He then told Neckel that he was serving him by refusal, but Neckel began circling the car with the

---

[1] Immediately after this exchange, the victim turned on a voice recorder.  Audio of the remainder of the interaction was captured on that device, on contemporaneous 911 recordings, or both.

pipe. The victim kept the car between himself and Neckel, but after a few circuits Neckel placed a hydraulic jack under the front wheels of the victim's car and lifted it off the ground.

¶ 6     Both men called 911 in the midst of this slow-motion chase. The victim reported that Neckel had threatened him with "a three foot piece of pipe" and had put a jack under his car, thus preventing him from leaving the property. Neckel called 911 four times. During the first call he and the 911 operator had the following exchange:

> Neckel: He's on private property and I'm going to neutralize the threat right now.
>
> 911 Operator: No, you can't do that.
>
> Neckel: Would you like me to ahh, render him incompetent? Would you like me to shoot him?
>
> 911 Operator: No, I want you to go inside and shut and lock the door and wait for a deputy.
>
> Neckel: That I won't do. He's in front of my house —
>
> 911 Operator: OK —
>
> Neckel: — and he has no business.

> 911 Operator: OK.  Are you behind on any payments?  Why is he there?
>
> Neckel: It matters not. . . .

The 911 operator repeatedly told Neckel to go inside, although it is not clear from the record whether he did so before the victim left. Nonetheless, at some point during the 911 calls, the victim's vehicle was released from the jack and he left the area to meet the police.

¶ 7     Neckel was charged with one count of felony menacing for threatening the victim with the metal pipe and one count of second degree criminal tampering for using the jack to prevent the victim from leaving in his car.  A jury found Neckel guilty of both counts.

## II.   Analysis

¶ 8     Neckel raises three contentions on appeal.  First, he argues that the trial court committed plain error when it failed to sua sponte correct four alleged misstatements by the victim and the prosecutor regarding the law of trespass.  Second, he contends that the trial court erroneously rejected his tendered jury instruction concerning the duty to retreat as it applies to the affirmative defense of defense of premises.  And last, he asserts that the trial court erroneously refused his supplemental instructions defining

4

"unlawful trespass" in the context of the affirmative defense of defense of premises. We address and reject each argument in turn.

A.    The Trial Court Did Not Err by Failing to Sua Sponte Correct Alleged Misstatements of Law by the Victim and the Prosecutor

¶ 9    Neckel asserts that the trial court committed plain error when it failed to correct what he contends were a total of "four misstatements regarding the law of trespass" made by the victim while testifying and the prosecutor during closing arguments. We discern no error at all, much less plain error.

1.    Standard of Review and Preservation

¶ 10    The legal accuracy of the challenged statements is a question of law that we review de novo. *See People v. Lopez*, 2018 COA 119, ¶ 21.

¶ 11    Neckel says that he did not preserve this issue and, as a result, asserts that the plain error standard should apply. We only partially agree with his concession. Indeed, our review of the record reveals that defense counsel did object to the first alleged misstatement of law made by the victim, thereby preserving that statement for our review. We review any error in allowing that statement for harmless error — meaning we will reverse only if

5

there is a reasonable possibility that it contributed to the conviction. *Pernell v. People*, 2018 CO 13, ¶ 22.

¶ 12 On the other hand, the second alleged misstatement was made by *defense counsel* during his cross-examination of the victim — who merely agreed with the proposition that defense counsel posed. Any error associated with the victim's answer to that question would be invited, *see People v. Wittrein*, 221 P.3d 1076, 1082 (Colo. 2009), and is therefore unreviewable. *People v. Foster*, 2013 COA 85, ¶ 36.

¶ 13 The prosecutor made the third and fourth alleged misstatements during closing argument. Because defense counsel did not object to them, we review those statements only for plain error. Plain error is obvious and substantial error that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14. In the context of unpreserved prosecutorial misconduct claims, to rise to the level of plain error the misconduct must be "flagrant or glaringly or tremendously improper." *People v. Cevallos-Acosta*, 140 P.3d 116, 122 (Colo. App.

2005) (citation omitted). "[A]n improper statement by a prosecutor in closing argument rarely constitutes plain error requiring reversal." *People v. Douglas*, 2012 COA 57, ¶ 64.

###### 2. The Victim's and the Prosecutor's Statements

¶ 14    The victim's first alleged misstatement occurred during his direct examination when the following exchange occurred:

> Q. While you're driving up Neckel's driveway, do you see a no-trespass sign?
>
> A. I don't recall.
>
> Q. Okay.  If you had seen it, would that have stopped you from approaching his home?
>
> A. No.
>
> Q. Why is that?
>
> A. Because it's not trespass.  It's not considered trespass.  As long as you're attempting to serve somebody and you're there for a legitimate reason, then you're not trespassing.
>
> DEFENSE COUNSEL: I object to that, Judge. That's a misstatement of the law.
>
> THE COURT: Based on his training and experience, that's his testimony.  You'll have a chance later to ask him questions.  Overruled.

7

¶ 15     Defense counsel elicited the second alleged misstatement during his cross-examination of the victim.  While asking questions about guidance created by the Process Servers Association of Colorado, defense counsel and the victim had the following colloquy:

> Q: Okay.  So let me ask you about some of the tenets of that organization.  They publish to their members that we have a right to approach a residence.  That right ends the moment a resident tells us to leave their property; correct?
>
> A: That's how I understand the law as well, yes.

¶ 16     The last two alleged misstatements occurred during the prosecutor's closing argument.  The first of these occurred while the prosecutor was addressing Neckel's claim that he reasonably believed that the victim was trespassing:

> Now, defense of premise, I have to disprove that he was in possession or control of any building, realty or premise.  Clearly it's Mr. Neckel's farm.  He lives there.  I can't disprove that.  Right?  But number two is did he use reasonable and appropriate physical force when and to the extent it was reasonably necessary to prevent or terminate what he reasonably believed was the commission or

8

attempted commission of an unlawful trespass. Right?

Now we're back to the trespass thing. Was it reasonable for Mr. Neckel to believe that [the victim] was trespassing? Possibly. There is a no-trespass sign at the end of the driveway. If someone is to go up that driveway, that doesn't mean they're illegally trespassing automatically.

It's just a sign. It's not the law. But did Mr. Neckel reasonably believe that [the victim] was trespassing? Possibly. But it also requires a reasonable and appropriate use of physical force to keep that person from trespassing.

¶ 17    The second statement occurred near the end of the prosecutor's closing argument, when he said,

Would it be reasonable for Mr. Neckel to come out wielding a pipe if there was a Girl Scout selling cookies on his property? That would be a trespass in his world. What if it was a high school kid trying to make money for the track team? Would that be reasonable?

¶ 18    Neckel maintains that these statements, taken individually and together, suggested to the jury "that the process server could not, by law, suffer liability as a trespasser, and thus the jury could not therefore find Mr. Neckel's attempts to eject him reasonable."

9

We reject this argument because both statements accurately reflected that the victim's initial entry onto the property was lawful.

### 3. Neither the Victim Nor the Prosecutor Misstated the Law Because the Victim's Entry Onto Neckel's Property Was Not a Trespass

¶ 19 Neckel contends that, because there were "No Trespassing" signs posted near one of the driveway entrances and on an outbuilding near his house, the victim became a trespasser the moment that he drove onto Neckel's property. He argues, however, that the testimony and statements described above could have misled the jury into believing that the victim was privileged to enter and remain on the property by virtue of his status as a process server. And indeed, that is precisely what the People argue in this court. They assert that under section 18-1-701, C.R.S. 2018, the victim was essentially immune from trespass laws so long as he was working to serve Neckel with papers as contemplated by the Rules of Civil Procedure. Although the license established by section 18-1-701 is not unlimited, we agree with the People that the statements in question accurately described the victim's privileges and obligations under the circumstances of this case.

10

¶ 20     We first address Neckel's claim that his "No Trespassing" signage closed his property to legal visitation absent an express invitation.  Courts have universally acknowledged, based on "the habits of the country," *McKee v. Gratz*, 260 U.S. 127, 136 (1922), an "implicit license [that] typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, 569 U.S. 1, 8 (2013).  And most jurisdictions — although not all — have held that revocation of this implied license, while possible, requires more than one or two out-of-the-way "No Trespassing" signs.  *See State v. Christensen*, 517 S.W.3d 60, 72 (Tenn. 2017) (acknowledging split of authority).  Courts adopting the majority view have consistently acknowledged the importance of context, concluding that "No Trespassing" signs may mean different things to different people depending on where and how they are posted.  As the Idaho Court of Appeals has put it,

> [while] [p]osting "No Trespassing" signs may indicate a desire to restrict unwanted visitors and announce one's expectations of privacy[,] . . . such signs cannot reasonably be interpreted to exclude normal, legitimate

11

> inquiries or visits by mail carriers, newspaper deliverers, census takers, neighbors, friends, utility workers and others who restrict their movements to the areas of one's property normally used to approach the home.

*State v. Rigoulot*, 846 P.2d 918, 923 (Idaho Ct. App. 1992). On rural property in particular, signs like Neckel's are likely to be construed by a casual visitor not as a bar to any entry whatsoever, but rather as a deterrent to those "who might be tempted to leave the highway and use the [owner's] driveway as an access route for their own purposes (e.g., hunting, camping, hiking, or the like)." *Michel v. State*, 961 P.2d 436, 438 (Alaska Ct. App. 1998). Because they are not talismans, "No Trespassing" signs are "not alone sufficient to convey to an objective officer, or member of the public, that he cannot go to the front door and knock." *United States v. Carloss*, 818 F.3d 988, 995 (10th Cir. 2016).

¶ 21    We agree with those courts that hold that a sign alone does not provide the "clear demonstration[]" necessary to revoke "[t]he implicit license enjoyed by law enforcement and citizens alike to approach the front doors of homes." *State v. Grice*, 767 S.E.2d 312, 319 (N.C. 2015). More is needed to convey to the public that the

12

owner wants to maintain complete privacy. But Neckel employs no such measures on his property. While a fence line separates his land from at least one neighbor, there is no fence along the road, and no gates or other barriers block either end of the driveway. Nor are the two "No Trespassing" signs prominently placed. In fact, a visitor entering the northern driveway entrance would not see any sign at all before reaching the house. Given these facts, we cannot agree with Neckel's assertion that the victim and the prosecutor misstated the law by denying that the victim was trespassing from the moment that he drove onto the property.

¶ 22 This is not to say, however, that, under section 18-1-701, the victim's status as a process server rendered him immune from trespass laws.[2] Section 18-1-701(1) provides that "conduct which would otherwise constitute an offense is justifiable and not criminal when it is required or authorized by a provision of law or a judicial decree binding in Colorado." "Laws governing the execution of legal

---

[2] Because he raised it for the first time at oral argument, we decline to address Neckel's assertion that section 18-1-701, C.R.S. 2018, establishes only an affirmative defense rather than substantive law. *People v. Becker*, 2014 COA 36, ¶ 23.

process" are covered by this exemption. § 18-1-701(2)(c). But the privilege that the statute confers is not without limits. At common law, for example, a process server's authority to enter private property to serve legal papers ends at the door to the recipient's home. *See, e.g., Vanden Bogert v. May*, 55 N.W.2d 115, 117-18 (Mich. 1952); *cf. People v. Lutz*, 762 P.2d 715, 717 (Colo. App. 1988) (holding that the defendant was entitled to a defense of premises instruction where a police officer unlawfully forced his way into the defendant's house). For much the same reason, courts commonly recognize that if a process server is prevented from approaching the front door, "the outer bounds of the actual dwelling place must be deemed to extend to the location at which the process server's progress is arrested." *F. I. duPont, Glore Forgan & Co. v. Chen*, 364 N.E.2d 1115, 1117 (N.Y. 1977); *see also Fine Homebuilders, Inc. v. Perrone*, 911 A.2d 1149, 1153-54 (Conn. App. Ct. 2006).

¶ 23    We thus reject Neckel's claim that comments by the victim and the prosecutor inaccurately suggested that the victim was not a trespasser. Based on both the implied license and section 18-1-701, the victim's entry onto Neckel's land to effect service was legal.

14

And while Neckel quickly revoked the implied license once he began interacting with the victim, we agree with the People that — to the extent the victim's conduct was consistent with the laws governing the execution of legal process — it remained statutorily privileged even after Neckel revoked the implied license.[3]

### B.  Rejection of Defense-Tendered Jury Instructions

¶ 24    Neckel contends that the trial court reversibly erred by refusing jury instructions that he tendered on two issues.  The first stated that Neckel had no duty to retreat before defending his premises.  The second, which actually encompassed two separate instructions, ostensibly defined "unlawful trespass."  We conclude that the trial court appropriately exercised its discretion by rejecting these instructions.

### 1.    Standard of Review and Preservation

¶ 25    The parties agree that Neckel preserved this issue by tendering the instructions in question to the trial court.

---

[3] We acknowledge that the protections of section 18-1-701(1) cease to apply once service is complete.  But the victim can hardly be blamed for not immediately vacating the property while Neckel was chasing him with a lead pipe and rendering his vehicle inoperable.

15

¶ 26    We apply a two-tier standard of review to jury instructions.

*People v. Stellabotte*, 2016 COA 106, ¶ 18, *aff'd*, 2018 CO 66.  First,

"[w]e review jury instructions de novo to determine whether the

instructions as a whole accurately informed the jury of the

governing law."  *People v. Jones*, 2018 COA 112, ¶ 24.  Second, "we

review a trial court's decision concerning a proposed jury

instruction for an abuse of discretion and will not disturb the ruling

unless it is manifestly arbitrary, unreasonable, or unfair."  *People v.*

*Trujillo*, 2018 COA 12, ¶ 11.

¶ 27    "A trial court's failure to provide a jury instruction after a

defendant requests such instruction will be reviewed under the

harmless error standard."  *Brown v. People*, 239 P.3d 764, 767

(Colo. 2010).  Under this standard, reversal is warranted only if the

error affected the defendant's substantial rights.  Crim. P. 52(a).

We will thus affirm "if there is no reasonable possibility that [the

instructional error] contributed to the defendant's conviction."

*Pernell*, ¶ 22.  *But see Mata-Medina v. People*, 71 P.3d 973, 980

(Colo. 2003) (holding that reversal is not required unless there is "a

16

reasonable probability that [the instructional error] contributed to the defendant's conviction").

### 2. The Trial Court Appropriately Declined the Tendered Instructions

#### a. "No Retreat" Instruction

¶ 28     At the jury instruction conference, Neckel's attorney asked the trial court to instruct the jury on the affirmative defenses of defense of premises and defense of person. Relying on the pattern instructions for those affirmative defenses, the trial court granted that request.

¶ 29     The pattern instruction for the affirmative defense of defense of person provides in part that "[t]he defendant was legally authorized to use physical force upon another person without first retreating" if certain conditions are met. COLJI-Crim. H:11 (2018). The pattern instruction for physical force in defense of premises does not include similar "no retreat" language. COLJI-Crim. H:16 (2018). However, consistent with the pattern instruction, the defense of premises instruction did state in pertinent part that

> [t]he defendant was legally authorized to use physical force upon another person if:

17

1. He was in possession or control of any building, realty, or other premises, and

2. He used reasonable and appropriate physical force, when and to the extent it was reasonably necessary to prevent or terminate what he reasonably believed was the commission or attempted commission of an unlawful trespass by the other person in or upon the building, realty, or premises.

¶ 30      Neckel's counsel, asserting that the "no retreat" doctrine applies not only to the affirmative defense of self-defense, but also to the affirmative defense of defense of premises, tendered an additional instruction: "[i]n evaluating whether the affirmative defenses in this case have been disproven beyond a reasonable doubt, you are instructed that there is no duty to retreat before one is allowed to employ force in the defense of a person or premises." Defense counsel argued that the need for the instruction was particularly acute because "the 911 operator kept telling Mr. Neckel, just go back in your house and lock your door." This direction, counsel argued, left the jury with the "impression . . . that there's some kind of requirement and you should go back in your house before you're allowed to defend your premises." The trial

18

court declined the instruction, explaining that, because the concept of retreat is fundamentally incompatible with defense of premises, there was no risk that the jury would incorrectly assume that Neckel had a duty to retreat before taking reasonable measures to defend his premises against what he reasonably believed to be an unlawful trespass.

¶ 31    We agree with the trial court.  The concept of defense of premises is at odds with the duty to retreat, and the pattern jury instruction (which the court provided), accompanied by straightforward logic, makes that abundantly clear.  In particular, the instruction states that one in possession or control of a piece of property may use physical force to defend it "*when* and to the extent *it was reasonably necessary to prevent or terminate* what he reasonably believed was the commission or attempted commission of an unlawful trespass."  (Emphasis added.)  But the occupant of a property cannot use physical force to prevent or terminate a trespass while at the same time retreating.  To the contrary, in order to prevent or terminate a trespass by using physical force, the occupant need not retreat at all, so long he uses force "when and to

19

the extent [that] it [is] reasonably necessary" to eject the trespasser. In short, because "no retreat" is inherent in both the concept of defense of premises and in the pattern instruction that was provided to the jury, the trial court did not abuse its discretion in rejecting the additional "no retreat" instruction that Neckel's counsel tendered. *See People v. Tweedy*, 126 P.3d 303, 307 (Colo. App. 2005) (holding that a court may refuse an instruction that states principles already encompassed elsewhere in the court's instructions).

b.     Rejection of the Instruction Defining "Unlawful Trespass"

¶ 32     Last, Neckel argues that the trial court erroneously rejected his tendered instructions concerning the definition of "unlawful trespass." We are not persuaded.

¶ 33     The additional instructions that Neckel's attorney asked the trial court to give said, "[a] person is a trespasser if they knowingly and unlawfully enter or remain in or upon the premises of another," and,

> [a] person "enters unlawfully" or "remains unlawfully" in or upon a premises when the person is not licensed, invited, or otherwise privileged to do so. A person who, regardless

20

> of his intent, enters or remains in or upon premises that are at the time open to the public does so with license and privilege unless the person defies a lawful order not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person. A license or privilege to enter or remain in a building that is only partly open to the public is not a license to enter or remain in that part of the building that is not open to the public.

¶ 34 Neckel argues that these instructions were necessary to clarify the defense of premises instruction, which applies only where the defendant has acted "to prevent or terminate what he reasonably believed was the commission or attempted commission of an unlawful trespass." The additional definitions in the tendered instructions, Neckel contends, were needed to correct the four alleged misstatements of law about the legality of the victim's entry onto the property that we discuss above. But as we have already determined, all of the statements that Neckel identifies were accurate. Thus, because Neckel relies on the victim's testimony and the prosecutor's argument as the basis for defining "unlawful trespass" for the jury, we conclude that the trial court appropriately declined to provide any additional definition.

21

### III.  Conclusion

We affirm the judgment.

JUDGE TERRY and JUDGE J. JONES concur.