23CA0011 Peo v Ez-Zahir 04-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0011
City and County of Denver District Court No. 22CR365
Honorable Eric M. Johnson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Chakib E. Ez-Zahir,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE HARRIS
Schutz, J., concurs
Fox, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

---

Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A person commits second degree assault if he intentionally causes bodily injury to a paramedic with the intent to prevent the paramedic from performing a lawful duty.  *See* § 18-3-203(1)(c), C.R.S. 2025.

¶ 2     Defendant, Chakib E. Ez-Zahir, was convicted of attempted second degree assault after he struck the forearm of a paramedic who was trying to transport him to the hospital for nonconsensual medical treatment.  On appeal, he contends that the trial court erred by refusing to instruct the jury on the scope of the paramedic's legal authority to use force to administer treatment and that the error lowered the prosecution's burden to prove an element of the charged offense and to disprove his self-defense claim.[1]  We agree, and we therefore reverse his conviction and remand the case for a new trial.

---

[1] Ez-Zahir also argues that the trial court erred by failing to include as an element in the attempted second degree assault jury instruction that his conduct was not legally authorized by the affirmative defense of self-defense.  In response to that argument only, the State counters that Ez-Zahir was not entitled to a self-defense instruction in the first instance.  In light of our disposition, we need not determine if the trial court erred in this respect.  *But see* COLJI-Crim. G2:01 (2025) (listing, as an element of attempt to commit a crime, that the defendant's conduct was not authorized by an affirmative defense).

## I. Background

¶ 3 When Ez-Zahir checked in for an appointment in an office lobby, the receptionist observed that his knuckles were scraped and bleeding and that he appeared intoxicated. A coworker told the receptionist that before Ez-Zahir arrived, she had seen him stumbling in traffic and fall. Ez-Zahir acknowledged that he had fallen but said he was fine. The receptionist called 911.

¶ 4 Two female paramedics arrived. The attending paramedic[2] approached Ez-Zahir and tried to assess his vital signs, even though he indicated that he did not want to speak with her, told her not to touch him (as she recalled that he said or implied that "he was Muslim"), and repeatedly motioned for her to move away from him. Because Ez-Zahir appeared to be injured but would not cooperate with a medical assessment, the paramedics determined that he had to be taken to the hospital, and because he appeared to be intoxicated, they determined that he lacked the decision-making capacity to refuse treatment. On learning that the paramedics

---

[2] The paramedics explained that when they work in a pair, each paramedic is assigned a distinct role. The "attending" paramedic cares for the patient, while the "driving" paramedic manages the scene and drives the ambulance.

intended to transport him to the hospital, Ez-Zahir became increasingly agitated, reiterated that he did not consent to treatment or them touching him, and attempted to leave by walking to the elevator bank.

¶ 5 The driving paramedic was standing between Ez-Zahir and the elevator. Ez-Zahir moved toward her, with "both of his arms up in the air, fists closed." The driving paramedic stepped backward against the elevator bank wall and put her hand out to stop Ez-Zahir. He swung his arms downward, striking the driving paramedic's forearm with one of his closed fists. The driving paramedic said, "Ow, you hit me," and Ez-Zahir "immediately said, 'I'm sorry,'" and walked back into the lobby area and sat down.

¶ 6 The prosecution charged Ez-Zahir with second degree assault of an emergency medical care provider, violation of bond conditions, and attempted third degree assault.[3]

¶ 7 At trial, both paramedics testified that throughout their contact with Ez-Zahir, they followed the Denver Health Paramedic Division protocols. According to the attending paramedic, Ez-Zahir

---

[3] The attempted third degree assault charge related to Ez-Zahir's conduct while in the ambulance.

was a patient (because he had injuries) who lacked decision-making capacity (because he was intoxicated), so under the protocols, the paramedics "had to transport him" to the hospital for further evaluation, "[r]egardless of whether or not he wanted to be transported." The attending paramedic clarified that the protocols did not require the patient to have a suspected "acute illness or injury" for paramedics to order nonconsensual transport to the hospital — any injury was sufficient.

¶ 8    Ez-Zahir defended on the theory that he acted in self-defense. He argued that, at the time he struck the driving paramedic, he reasonably perceived "that he was about to be taken [to the hospital] against his will" to be subjected to nonconsensual medical treatment, and he used a reasonable amount of force to repel the "threat of an imminent unlawful use of force against him."

¶ 9    The trial court agreed to instruct the jury on the affirmative defense of self-defense. Ez-Zahir then asked the court to give a supplemental instruction defining the scope of the paramedics' lawful authority to subject him to nonconsensual medical treatment. The instruction was necessary, he argued, to show that the paramedics could not lawfully use force to transport him to the

hospital for treatment, thereby negating the "lawful duty" element of second degree assault and supporting his self-defense claim.

¶ 10    Ez-Zahir's proposed instruction was adapted from section 18-1-703(1)(e), C.R.S. 2025, and the related pattern jury instruction, COLJI-Crim. H:10 (2021). The statute provides that the use of physical force against another person that would otherwise be unlawful is "justifiable and not criminal" under certain circumstances. Those circumstances include when a physician or "a person acting under his or her direction" uses "reasonable and appropriate physical force for the purpose of administering . . . treatment," and the patient consents or, if the patient is not "competent to consent," the treatment is administered "in an

emergency" and the treating professional reasonably believes that "a reasonable person . . . would consent." § 18-1-703(1)(e)(I)-(II).[4]

¶ 11    Using section 18-1-703(1)(e) as a guide, Ez-Zahir tendered the following instruction:

> [The driving paramedic] was legally authorized to use or attempt to use physical force upon another person if:
>
> 1.    She was a person acting under the direction of a duly licensed physician, and
>
> 2.    She used or attempted to use a [sic] reasonable and appropriate physical force for the purpose of administering a recognized form of treatment that she reasonably believed to be

---

[4] Section 18-1-703(1)(e), C.R.S. 2025, provides as follows:

> A duly licensed physician . . . or a person acting under his or her direction, may use reasonable and appropriate physical force for the purpose of administering . . . treatment that [the medical provider] reasonably believes [would] promot[e] the physical or mental health of the patient if:
>
> (I) The treatment is administered with the consent of the patient, or if the patient is . . . incompetent [to consent], with the consent of his . . . [caretaker]; or
>
> (II) The treatment is administered in an emergency when the [medical provider] reasonably believes that no one competent to consent can be consulted and that a reasonable person, wishing to safeguard the welfare of the patient, would consent.

6

adapted to promoting the physical or mental health of the patient, and

3. The treatment was administered with the consent of the patient.

¶ 12 The court initially agreed that an instruction on the scope of the paramedics' lawful duties was likely necessary to accurately instruct the jury on the applicable law. But the court ultimately declined to give any supplemental instruction, primarily because the proposed instruction was based on an affirmative defense, and the court could not "figure out a way to fix" the proposed instruction to fit the circumstances of the case. Instead, the court decided that the jury could rely on the protocols to determine the lawfulness of the paramedics' conduct.

¶ 13 The jury found Ez-Zahir guilty of the lesser included offense of attempted second degree assault and acquitted him of third degree assault.[5]

---

[5] The prosecution dismissed the violation of bond conditions charge during trial.

## II.    Jury Instruction

### A.    Legal Principles

¶ 14    To obtain a conviction for second degree assault of an emergency medical care provider, the prosecution must prove beyond a reasonable doubt that (1) the defendant; (2) with the intent to prevent an emergency care provider from performing *a lawful duty*; (3) intentionally caused bodily injury to any person. § 18-3-203(1)(c).  Thus, the prosecution must prove that the emergency care provider — in this case, the paramedic — was "acting lawfully" in the performance of her duties.[6]  *People v. Roberts*, 626 P.2d 1161, 1162 (Colo. App. 1980); *see also People v. Southard*, 276 Cal. Rptr. 3d 656, 664 (Ct. App. 2021) ("[I]n order to

---

[6] Section 18-3-203(1)(c), C.R.S. 2025, the subsection of the second degree assault statute under which Ez-Zahir was charged, does not define "lawful duty."  We disagree with the dissent that section 18-3-201(2), C.R.S. 2025, provides any useful guidance.  That provision, which applies to a different subsection of the second degree assault statute, explains that a peace officer, firefighter, or paramedic is "engaged in the performance of his or her duties" when he or she is engaged in (or present for the purpose of engaging in) "the performance of any duty, service, or function imposed, authorized, required, or permitted by law to be performed by" the peace officer, firefighter, or paramedic.  But that definition just begs the question at issue here: What is the scope of the "duty, service, or function" that a paramedic is "authorized, required, or permitted by law" to perform?

8

be 'perform[ing] a lawful duty,' the officer must be acting lawfully."
(citation omitted)).

¶ 15　Whether the paramedic was acting lawfully also controlled El-Zhair's self-defense claim. Under section 18-1-704(1), C.R.S. 2025, a person has the right to use force to defend himself from the use or imminent use of unlawful physical force by another person, and he may use a degree of force that he reasonably believes is necessary for that purpose. The touchstone of self-defense is a belief that one is defending against the *unlawful* use of force. *People v. Silva*, 987 P.2d 909, 915 (Colo. App. 1999). The corollary to that proposition is that a person is not justified in using force to defend against another person's *lawful* use of force. *People v. Jones*, 2018 COA 112, ¶ 29.

¶ 16　As an affirmative defense, self-defense is treated as an additional element of the charged offense, and the prosecution bears the burden of disproving the affirmative defense beyond a reasonable doubt. *Galvan v. People*, 2020 CO 82, ¶ 21; § 18-1-407(2), C.R.S. 2025.

## B.    Standard of Review

¶ 17    A trial court has a duty to instruct the jury on all matters of law applicable to the case.  *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011).

¶ 18    We review jury instructions de novo to determine whether, as a whole, they accurately informed the jury of the governing law. *People v. Neckel*, 2019 COA 69, ¶ 26.  If they did, then we review the court's decision to give or not to give a particular instruction for an abuse of discretion.  *People v. Cox*, 2023 COA 1, ¶ 38.

## C.    Analysis

### 1.    The Court Erred by Failing to Give an Instruction

¶ 19    The question presented on appeal is whether, to accurately inform the jury of the governing law given the particular facts of the case, the trial court was required to give an instruction concerning the lawfulness of the paramedics' conduct.  We conclude that the answer is yes.

¶ 20    The trial court must instruct the jury on the essential elements of the crime charged.  *See People v. Fitchner*, 869 P.2d 539, 543 (Colo. 1994).  When an instruction tracking the statutory language is insufficient to apprise the jury of the applicable law, the

trial court must tailor the instructions to the particular circumstances of the case. *Idrogo v. People*, 818 P.2d 752, 754 (Colo. 1991). This includes a duty to provide the "particular definition of an element of an offense if the element constitutes a term that has acquired a technical or particular meaning, whether by legislative definition or otherwise." *People v. Serra*, 2015 COA 130, ¶ 50.

¶ 21    Two elements of attempted second degree assault are at issue here. The prosecution had to prove beyond a reasonable doubt that the paramedics were performing "a lawful duty" — i.e., acting lawfully — and that Ez-Zahir was not acting in self-defense when he hit the driving paramedic's forearm — i.e., the paramedics were not using or about to use unlawful force against Ez-Zahir.

¶ 22    In *Roberts*, a division of this court concluded that because second degree assault of a peace officer under section 18-3-203(1)(c) requires proof that the officers "were acting lawfully," the trial court "[i]s required to instruct the jury regarding the lawful nature of the police activity." 626 P.2d at 1162. In that case, the defendant attempted to enter his ex-wife's house; when the police arrived, a "scuffle ensued," and two officers were injured. *Id.* at

11

1161. The trial court instructed the jury on the law regarding an officer's right to forcibly detain a suspect and on the elements of various uncharged crimes related to the defendant's attempted entry into the house. *Id.* at 1162. On appeal, the division held that the instructions were necessary because the jury had to determine whether the officers were performing lawful duties when they attempted to restrain the defendant, leading to the scuffle. *Id.*

¶ 23    The *Roberts* division's reasoning applies here. The jury could not determine whether the prosecution had met its burden to prove the "lawful duty" element of second degree assault unless it had some basis for assessing the legality of the paramedics' conduct.

¶ 24    Likewise, an instruction was necessary to allow the jury to properly evaluate Ez-Zahir's affirmative defense of self-defense. "[W]hen the instructions, taken as a whole, do not adequately apprise the jury of the law of self-defense from the standpoint of the defendant," the trial court must give a supplemental instruction. *People v. Garcia*, 28 P.3d 340, 347 (Colo. 2001) (citation omitted) (trial court erred by failing to give a no-duty-to-retreat instruction when the defendant asserted the defense of self-defense); *see also Idrogo*, 818 P.2d at 757 ("[W]here the question of whether [the

12

defendant] did in fact retreat was vigorously disputed, [the defendant] was entitled to have the jury properly instructed on the applicable law of non-retreat."); *People v. Roberts-Bicking*, 2021 COA 12, ¶ 25 (in a multiple-assailants self-defense case, an instruction tracking the self-defense statute is insufficient; the trial court must instruct the jury to consider the totality of the circumstances in assessing the reasonableness of the defendant's belief that force was necessary); *Jones*, ¶¶ 47-51 (court erred by not instructing the jury that, under the force-against-intruders statute, the homeowners' use of force was lawful only if the defendant's entry into the home was knowingly unlawful because the lack of an instruction improperly abridged the defendant's self-defense defense).

¶ 25    Ez-Zahir's theory was that he reasonably believed the paramedics were about to use unlawful force against him to transport him to the hospital for treatment and that, in hitting the driving paramedic's forearm, he used a reasonable degree of force to avoid that outcome.  But that theory was viable only if the paramedics did not have a legal right to forcibly usher him into the ambulance.  *See Jones*, ¶ 29.  In agreeing to give the pattern self-

13

defense instruction, the trial court acknowledged that "the [alleged] unlawful nature of th[e] [paramedics'] physical force is a question for the jury." But without an instruction, the jury could not know whether the paramedics had a legal right to use force.

¶ 26     The State defends the trial court's decision to reject the instruction on the grounds that the instruction was not supported by the evidence and "did not apply to the facts of th[e] case." We are not persuaded.

¶ 27     First, we disagree that, because the paramedics did not actually use force against Ez-Zahir, the instruction was not supported by the evidence. As we understand the trial court's reasoning, it read the first clause of the tendered instruction — "[the driving paramedic] was legally authorized to use or attempt to use physical force upon another person if" — to mean that the paramedics *had* used or attempted to use force against Ez-Zahir. And because the court determined that the paramedics did not actually use or attempt to use force against Ez-Zahir before he struck the driving paramedic, it determined that the evidence did not support the instruction.

14

¶ 28    But the instruction was not a comment on what *had happened* during the paramedics' interaction with Ez-Zahir.  It was a general statement of the law outlining the circumstances under which the paramedics *would be* legally authorized to use force against a patient.

¶ 29    As noted, under Colorado law, a person can use physical force to defend himself only if he reasonably believes that another person is using or will imminently use *unlawful* physical force against him.  § 18-1-704(1).  The instruction explained that if the statutory circumstances were present, the paramedics' use of force would have been *lawful,* meaning that Ez-Zahir would not be justified in using physical force against them.  Conversely, if the statutory circumstances were not present, any use of force by the paramedics would have been *unlawful,* meaning that Ez-Zahir would be justified in using physical force against them if he reasonably believed that their use of force was imminent.

¶ 30    Therefore, in terms of evidentiary support, all that was required to give the instruction was some evidence that Ez-Zahir could reasonably have believed that the paramedics were about to use force to subject him to nonconsensual medical treatment.  *See*

*People v. McKnight*, 626 P.2d 678, 682 (Colo. 1981) (a party is entitled to a jury instruction if there is sufficient competent evidence to support it and it is consistent with existing law.). And the trial court agreed that the evidence was sufficient in this regard.

¶ 31 The court acknowledged that under the circumstances, Ez-Zahir's assumption that the paramedics were "going to go hands-on" was "fair game." The court pointed to the attending paramedic's testimony that, when patients are intoxicated, she "usually say[s], 'You don't have a choice [about going to the hospital] because you are intoxicated. I have to make medical decisions for you for your safety.'" And one of the paramedics acknowledged that in trying to check Ez-Zahir's vital signs, she may have touched him without his consent. We agree that given this evidence, Ez-Zahir could reasonably have believed that his continued refusal to submit to treatment would result in the paramedics' imminent use of physical force against him.

¶ 32 Because Ez-Zahir's defense revolved around the lawfulness of the paramedics' actions, and there was some evidence presented at trial supporting his theory, *some* additional instruction was required to tailor the jury instructions to the case and to ensure the

16

jury had a basis to assess the lawfulness of the paramedics'
conduct. *See Roberts*, 626 P.2d at 1162; *Idrogo*, 818 P.2d at 754;
*Garcia*, 28 P.3d at 347.

¶ 33    That brings us to the question of whether Ez-Zahir's tendered
instruction, based on section 18-1-703(1)(e), fit the facts of the
case — in other words, whether that instruction accurately
informed the jury of the scope of the paramedics' lawful duties.
Adopting the trial court's view, the State says no, because section
18-1-703(1)(e) provides an affirmative defense for a medical provider
accused of using unlawful force in the treatment of a patient, and
here, Ez-Zahir was the putative patient, not the medical provider.

¶ 34    The State does not dispute that the statute accurately states
the scope of a medical provider's lawful authority to use force
against another person in connection with administering medical
treatment.  Nor does the State explain (and it is not obvious to us)
why it matters that the accurate legal principle is styled as an
affirmative defense. *See People v. Hayward*, 55 P.3d 803, 805
(Colo. App. 2002) ("In discharging the duty to instruct the jury
properly on all matters of law, the trial court may instruct the jury

17

concerning a principle of law that is related to an issue in controversy.").

¶ 35 The dissent presents a new theory: that the paramedics were not administering medical treatment in the office lobby — they were merely attempting to transport Ez-Zahir to the hospital — and, therefore, section 18-1-703(1)(e) does not apply. Setting aside the fact that the State did not take that position in the trial court or on appeal, and the trial court did not base its decision on that theory, we think the dissent's view is inconsistent with section 18-1-703(1)(e) and the record.

¶ 36 The statute authorizes a medical provider to use reasonable and appropriate physical force "for the purpose of administering" medical treatment. In other words, a medical provider is not limited to using force *to administer* medical treatment; the force can be used to facilitate or achieve the administration of the treatment. *See* Merriam-Webster Dictionary, https://perma.cc/WX8F-PMYB; *Nash v. Mikesell*, 2024 COA 68, ¶ 16 (in interpreting a statute, the court must "give each word independent effect"). Here, the paramedics were dispatched to administer medical treatment, they attempted to administer medical treatment in the office lobby, and

they decided to transport Ez-Zahir for the purpose of administering treatment at the hospital. Accordingly, we conclude that section 18-1-703(1)(e) fit the circumstances of the case.

¶ 37 Still, as the trial court correctly noted, Ez-Zahir's tendered instruction did not account for a medical provider's right to use force, under limited circumstances, even without a person's consent. But defense counsel agreed to include language from subsection (1)(e)(II) in the instruction. And regardless, even when a tendered instruction is incomplete or inaccurate, the trial court is not "free to disregard [the defendant's] request" for an instruction necessary to implement his affirmative defense of self-defense. *Idrogo*, 818 P.2d at 754; *see also Garcia*, 28 P.3d at 349 n.8 (even if the defendant's tendered self-defense instruction failed to accurately state the law, the tendered instruction "put the trial

court on notice" that an instruction was necessary and, therefore, the court had a duty to give the jury an accurate instruction).[7]

¶ 38     The point is not that the trial court had to give Ez-Zahir's tendered instruction or that it had to base a supplemental instruction on section 18-1-703(1)(e) (though we see no problem with the latter approach).  The point is — and here, even the dissent agrees — that the jury had to determine whether the paramedics were engaged in lawful duties at the time of the alleged attempted

---

[7] For this reason, we consider irrelevant whether the tendered instruction constituted a theory of defense instruction or a supplemental instruction on the applicable law.  Either way, the court had to inform the jury of the governing law.  *See Schuessler v. Wolter*, 2012 COA 86, ¶ 22 (presenting the defendant's theory of the case may "require discrete instructions on relevant, specific principles of law").

assault.[8]  Because Ez-Zahir claimed, with record support, that the paramedics were about to use unlawful force against him for the purpose of administering medical treatment without his consent, *some* accurate instruction on the scope of the paramedics' lawful authority to use force was necessary to assist the jury in making that determination.  *See Roberts,* 626 P.2d at 1162; *Garcia,* 28 P.3d at 347.

## 2.    The Error Was Not Harmless

¶ 39    The parties dispute the applicable standard of reversal.  Ez-Zahir argues that we should review the error under a constitutional

---

[8] The dissent argues that section 27-81-111, C.R.S. 2025, more accurately sets forth the scope of the paramedics' authority to use force and that, if the court had given an instruction based on section 18-1-703(1)(e), the prosecution could have sought an additional instruction based on section 27-81-111.  Section 27-81-111, however, applies to emergency commitments.  The statute authorizes "an emergency service patrol" to take into "protective custody" a person who is incapacitated by alcohol or drugs and is "clearly dangerous" to himself or others to effectuate an emergency commitment to an "approved treatment facility." § 27-81-111(1)(a).  There was no evidence that the paramedics were part of an "[e]mergency service patrol," § 27-81-102(7), C.R.S. 2025, that Ez-Zahir was clearly a danger to himself or others, or that the paramedics intended to, or did, initiate an "emergency commitment" to a "treatment facility," § 27-81-111(7).  Nonetheless, the dissent's reliance on section 27-81-111 supports the conclusion that the jury needed some legal basis for determining the lawfulness of the paramedics' conduct.

21

harmless error standard, while the State says that the nonconstitutional harmless error standard applies. *See James v. People*, 2018 CO 72, ¶ 19 (explaining harmless error standards of reversal). Generally, when an instructional error lowers the prosecution's burden of proof, which occurs when the court misinstructs the jury on self-defense, the error is subject to constitutional harmless error analysis. *See Pearson v. People*, 2022 CO 4, ¶ 16. But we need not definitively resolve the parties' dispute because we conclude that reversal is warranted even under the nonconstitutional harmless error standard. *See People v. Schnorenberg*, 2025 CO 43, ¶ 51. Under that standard, an error requires reversal unless the State proves "that the error did not substantially influence the verdict or affect the fairness of the trial proceedings." *James*, ¶ 19.

¶ 40     The State contends that any error in failing to give the supplemental instruction was harmless because the paramedics' protocols sufficiently advised the jury of the scope of their lawful duties, and, in any event, Ez-Zahir's theory of defense was adequately conveyed through defense counsel's closing argument. We disagree.

¶ 41    The protocols were not an adequate substitute for a jury instruction defining the scope of the paramedics' lawful duties.  For one thing, although the protocols direct the paramedics to transport nonconsenting patients to the hospital under certain circumstances, they do not address the paramedics' allowable use of force to do so.  More problematically, the protocols are not binding on the paramedics.  The driving paramedic testified that "protocols are guidelines.  They're gray areas."  The attending paramedic confirmed that the protocols are "guideline[s]" from which paramedics are "allowed to deviate if it is in the safety of the patient or in the patient's best interest," a decision left to the judgment of the paramedics.  Under section 18-1-703(1)(e)(II), a medical provider may use reasonable force to administer treatment only when there is "an emergency."  And while the consent protocol includes a similar standard (a patient who lacks decision-making capacity should be transported to the hospital if his "life or health is in danger"), that protocol cannot define the scope of the paramedics' lawful authority to use force because it says nothing about the use of force, is not binding on the paramedics, and is not the law.  Indeed, the attending paramedic testified that the paramedics

could, consistent with the protocols, administer treatment to Ez-Zahir without his consent even if his only discernible injury was scraped knuckles.

¶ 42    As for defense counsel's opportunity to argue about the lawfulness of the paramedics' conduct, it is well established that "arguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978).  "It is the duty of the trial court — not counsel — to 'correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions.'"  *Jones*, ¶ 64 (quoting *People v. Jacobson*, 2017 COA 92, ¶ 10).

¶ 43    In our view, there is a "reasonable probability that the error contributed to the verdict."  *People v. Wise*, 2014 COA 83, ¶ 27 (quoting *Krutsinger v. People*, 219 P.3d 1054, 1063 (Colo. 2009)). We cannot say that the evidence established, as a matter of law, that the paramedics were lawfully authorized to use force under section 18-1-703(1)(e).  Rather, a reasonable jury could have found that Ez-Zahir's physical condition — even considering his intoxication, recent fall, and scraped knuckles — did not rise to the level of "an emergency" allowing the paramedics to forcibly

transport him for the purpose of administering medical treatment without his consent. And if the jury made that finding, then Ez-Zahir was justified in using reasonable force against them so long as he had a reasonable belief that the paramedics were about to forcibly transport him. A reasonable jury could have made that finding too.

¶ 44 In sum, like the division in *People v. Lutz*, "[w]e cannot say, as a matter of law, either that [Ez-Zahir] entertained a reasonable belief" that the paramedics were about to use unlawful force against him, "or that [his] actions . . . were reasonable" under the circumstances. 762 P.2d 715, 717 (Colo. App. 1988). "We say only that [Ez-Zahir] was entitled to a jury determination of those issues under an appropriate instruction." *Id.*

### III. Disposition

¶ 45 The judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE SCHUTZ concurs.

JUDGE FOX dissents.

25

JUDGE FOX, dissenting.

¶ 46    The majority offers a well-written and appealing decision, but I cannot join it.  Respectfully, in my view, the district court was not required to provide a definition that did not apply to the situation.  And because the jury was properly instructed and counsel were allowed to present evidence and make arguments relevant to the elements of attempted second degree assault, reversal is not warranted.  In my view, there is no reasonable probability that the failure to provide the requested instruction contributed to the jury's verdict.  *See People v. Wise*, 2014 COA 83, ¶ 27.

I.    The Requested Instruction

¶ 47    A district court has a duty to instruct the jury on the law that applies to a case, *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011), and the court did just that here.  As relevant to this appeal, it instructed the jury on the elements of second degree assault and attempted second degree assault (as to the emergency medical care provider).  And, given Ez-Zahir's intoxication, the court instructed the jury that (1) it could "consider whether or not the evidence of intoxication negated the existence of the elements of 'with intent' or 'intentionally'"; (2) the prosecution had the burden to prove all the

elements of the charged crime(s) beyond a reasonable doubt; and (3) if the jury found that Ez-Zahir was "intoxicated to such a degree that he did not act with the required mental state," it should find him not guilty. The court also instructed the jury on the affirmative defense of "defense of person" as a defense to second degree assault and attempted second degree assault.

¶ 48 True, the court did not provide an instruction outlining the scope of the emergency personnel's lawful authority to take Ez-Zahir to the hospital.[1] But, as I explain here, the court was not required to so instruct the jury.

¶ 49 As I read the record, it is apparent that the emergency personnel were present to assess the situation and to take Ez-Zahir to the hospital for treatment. They assessed him but did not provide medical care onsite. Section 18-1-703(1)(e)(I) and (II), C.R.S. 2025, which the defense proposed as an instruction, allows enumerated healthcare workers to use "reasonable and appropriate physical force" to administer "a recognized form of treatment" believed to promote the patient's physical or mental health (1) if the

---

[1] The court provided other definitions that are not disputed on appeal.

27

patient (or his parent or guardian) consent or (2) if the treatment is administered in an emergency when the service provider reasonably believes "no one competent to consent can be consulted and that a reasonable person, wishing to safeguard the welfare of the patient, would consent." While section 18-1-703(1)(e) may apply to what the medical providers did once Ez-Zahir arrived at a hospital or treatment facility, I disagree that it applied to the emergency personnel's actions of attempting to transport Ez-Zahir in an ambulance.

¶ 50 And, if the district court provided the defense-requested instruction, the prosecution could have reasonably proposed that the jury also be instructed, consistent with a different statute, that *if* Ez-Zahir was incapacitated by a substance (including alcohol) and posed a danger to himself or others (by stumbling in traffic on a busy Colfax Avenue), the emergency service providers were obligated to take him "into protective custody in an approved treatment facility." § 27-81-111(1)(a), C.R.S. 2025 (emergency service providers and police officers "*shall* take the person into protective custody in an approved treatment facility" (emphasis added)); *People v. Dist. Ct.*, 713 P.2d 918, 922 n.7 (Colo. 1986)

28

(explaining that "shall" is most commonly mandatory); COLJI-Crim. H:10 (2025) (entitled "Use of Force, Special Relationships").

¶ 51    The jury was appropriately instructed on attempted second degree assault and self-defense, and both parties were then allowed to present relevant evidence and appropriate arguments on whether the operative facts satisfied the statute.  Nothing more was required of the district court.  *See People v. Montoya,* 104 P.3d 303, 307 (Colo. App. 2004) (failure to define "lawful duty" was not plain error when no evidence suggested the victim was not authorized to act as a firefighter or paramedic).

¶ 52    It is true that the legislature did not define "lawful duty" in the second degree assault statute,[2] but it did define the protected professionals — peace officers, firefighters, and emergency medical personnel, § 18-3-201(1.3), (1.5), C.R.S. 2025 — by reference to

---

[2] The statute has existed in its current form since its repeal and reenactment in 1971.  *See* Ch. 121, sec. 1, § 40-3-203, 1971 Colo. Sess. Laws 420.  The comment to section 40-3-201, C.R.S. 1971, indicates that sections 40-3-201 to -204, C.R.S. 1971, were adopted from Michigan's law and that the types of assaults were expanded "to make special provision for the protection of firemen and policemen engaged in the performance of their duties."  § 43-3-201, C.R.S. 1971 cmt.; *see also People v. Banks*, 9 P.3d 1125, 1128 (Colo. 2000) (discussing the 1988 amendments, which increased penalties for crimes against peace officers and firefighters).

their work, meaning when they are "engaged or acting in, or . . . [are] present for the purpose of engaging or acting in, the performance of any duty, service, or function imposed, authorized, required, or permitted by law to be performed" by the professionals, § 18-3-201(2). I read this to mean that the legislature wanted the term "lawful duty" to be broadly interpreted. And emergency personnel act lawfully when they take an incapacitated person like Ez-Zahir "into protective custody in an approved treatment facility."[3] § 27-81-111(1)(a).

¶ 53 It was for the jury to decide whether the paramedics acted consistently with their duties and thus lawfully. Whether emergency personnel act consistent with — or exceed — the scope of their duties varies; for that very reason, they are trained on different responses to shifting on-the-ground situations. They need leeway to assess and address those emergencies quickly and without fear of implementing the necessary response.

---

[3] Of course, the prosecutor could have taken that incapacitation into account in deciding whether to charge Ez-Zahir in the first place.

## II. Any Claimed Error Did Not Drive the Jury Verdict

¶ 54    I am also unpersuaded that the jury would have arrived at a different verdict, *see Wise*, ¶ 27, if the court gave an instruction mirroring section 18-1-703(1)(e), especially if the jury was also instructed consistent with section 27-81-111.

¶ 55    Because the majority is remanding for a new trial where the requested instruction is given, I take no position on El-Zahir's remaining arguments, which may not arise on retrial or may arise under different circumstances.  *See People v. Becker*, 2014 COA 36, ¶ 29 (addressing issues that may not arise again would "result in an advisory opinion, which risks improperly depriving the parties of their prerogative to litigate the case as they choose").

¶ 56    With respect, I dissent and would affirm the judgment.